STATE OF NORTH CAROLINA v. KENNETH E. SMITH

No. 309PA96

(Filed 24 July 1997)

1. **Searches and Seizures § 68 (NCI4th)— consent to search— previous information about drugs—previous conversation about consent**

   The fact that an officer had previously obtained information concerning the location of drugs in a home and had previously spoken with one of the residents concerning her consent to search does not invalidate a lawful consent to search.

   **Am Jur 2d, Searches and Seizures § 92.**

   **Authority to consent for another to search or seizure. 31 ALR2d 1078.**

   **Admissibility of evidence discovered in search of defendant's property or premises authorized by one, other than relative, who is cotenant or common resident with defendant—state cases. 4 ALR4th 1050.**

   **Admissibility of evidence discovered in warrantless search of property or premises authorized by one having ownership interest in property or premises other than relative. 49 ALR Fed. 511.**

2. **Searches and Seizures § 68 (NCI4th)— consent to search— knock and talk procedure**

   A "knock and talk" procedure whereby officers approach a residence with the intent to obtain consent to conduct a warrantless search and seize contraband when they lack the probable cause necessary to obtain a search warrant does not taint the consent or render the procedure *per se* violative of the Fourth Amendment.

**STATE v. SMITH**

[346 N.C. 794 (1997)]

**Am Jur 2d, Searches and Seizures § 92.**

**Authority to consent for another to search or seizure. 31 ALR2d 1078.**

**Admissibility of evidence discovered in search of defendant's property or premises authorized by one, other than relative, who is cotenant or common resident with defendant—state cases. 4 ALR4th 1050.**

**Admissibility of evidence discovered in warrantless search of property or premises authorized by one having ownership interest in property or premises other than relative. 49 ALR Fed. 511.**

3. **Searches and Seizures § 60 (NCI4th)— consent to search— voluntariness—remand for findings**

Defendant's motion to suppress is remanded for reconsideration and further findings where the trial court failed to make a specific finding as to whether a resident of a house voluntarily consented to the search of a room she shared with defendant, and the appellate court is thus unable to determine as a matter of law whether defendant's Fourth Amendment rights were violated by a warrantless search of the room and the seizure of drugs found therein.

**Am Jur 2d, Searches and Seizures § 83.**

**Validity, under Federal Constitution's Fourth Amendment, of search conducted pursuant to consent— Supreme Court cases. 111 L. Ed. 2d 850.**

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of a constitutional question pursuant to N.C.G.S. § 7A-30 of a unanimous, unpublished decision of the Court of Appeals, 123 N.C. App. 162, 472 S.E.2d 610 (1996), affirming the order granting defendant's motion to suppress entered by Rousseau, J., on 20 July 1995 in Superior Court, Forsyth County. Heard in the Supreme Court 15 May 1997.

*Michael F. Easley, Attorney General, by Jane R. Garvey, Assistant Attorney General, for the State-appellant.*

*Daniel S. Johnson for defendant-appellee.*

STATE v. SMITH

[346 N.C. 794 (1997)]

*Winston-Salem Police Department, by Mary Claire McNaught, on behalf of North Carolina Association of Police Attorneys, North Carolina Association of Chiefs of Police, and North Carolina Police Executives Association, amici curiae.*

PARKER, Justice.

On 24 April 1995 defendant was indicted for possession of marijuana with intent to sell and deliver. Defendant filed a motion to suppress evidence seized during a warrantless search of defendant's residence on 20 January 1995. At the hearing on defendant's motion, the trial court concluded that defendant's constitutional rights were violated by the warrantless search and granted defendant's motion to suppress.

The order allowing defendant's motion to suppress contains the following findings of fact. Prior to 20 January 1995 Detective E.M. Ruiz of the Winston-Salem Police Department received information that defendant possessed drugs at his residence. Detective Ruiz obtained this information from defendant's girlfriend, Janet Abrams. On 20 January 1995 Abrams called Ruiz and informed Ruiz that the drugs were located in a black suitcase and a black trunk in the room Abrams shared with defendant. Detective Ruiz relayed this information to Detective J.D. Cooke, also with the Winston-Salem Police Department. The detectives concluded they did not have sufficient information to obtain a search warrant for defendant's residence and decided to use a procedure known as "knock and talk."

The trial court made the following findings concerning the "knock and talk" procedure.

The "knock and talk" procedure is a tactic used by law enforcement in Winston-Salem when they get information that a certain person has drugs in a residence but the officers don't have probable cause for a search warrant. The officers then proceed to the residence, knock on the door, and ask to be admitted inside. Thereafter gaining entry, the officers inform the person that they're investigating information that drugs are in the house. The officers then ask for permission to search and apparently are successful in many cases in getting the occupant's "apparent consent".

The trial court found that in the instant case Abrams told Ruiz in advance that she would give consent to search the bedroom she shared with defendant. Detective Cooke and Detective Ruiz arrived at

**STATE v. SMITH**

[346 N.C. 794 (1997)]

defendant's residence with three additional officers and a K-9 dog. The trial court also made the following findings:

> That Detective Ruiz and Detective Cook approached the door, knocked on the door. That a James Walters came to the door. The two officers were in plainclothes with a badge and guns in holsters and that the other three officers and the dog remained in the van in front of the house. That the officers asked Mr. Walters if they could come in rather than stand outside. That they then went inside. That Officer Ruiz advised Mr. Walters they were investigating drugs and had information that Kenneth Smith had the drugs there in that residence. That Officer Ruiz asked Mr. Walters if they could search and he gave permission to search the common areas and said he had the bedroom in the basement where he slept on a couch.

Additional findings were that the other three officers and the K-9 dog then entered the house and conducted a search in these areas. No controlled substances were found. Detective Ruiz asked Abrams if the officers could search the bedroom she occupied with defendant, "to which she had already stated that she would give consent." The K-9 dog entered the room and indicated that drugs were in a suitcase and a black trunk located in the bedroom closet. A bag of marijuana was also found in the closet.

Based on these findings the trial court concluded that defendant's constitutional rights had been violated and granted defendant's motion to suppress. The State appealed to the Court of Appeals, which affirmed the order granting defendant's motion to suppress. On 16 July 1996 the State filed a petition for discretionary review pursuant to N.C.G.S. § 7A-31 and a notice of appeal of a constitutional question pursuant to N.C.G.S. § 7A-30. On 5 September 1996 this Court granted defendant's petition for discretionary review.

In reviewing the trial court's order following a motion to suppress, we are bound by the trial court's findings of fact if such findings are supported by competent evidence in the record; but the conclusions of law are fully reviewable on appeal. *State v. Mahaley*, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995).

With the exception of a few immaterial discrepancies, the State does not take issue with the findings of fact set out by the trial court. The State does, however, contest the trial court's conclusions of law which were as follows:

BASED ON THE FOREGOING, the Court concludes that the defendant's constitutional rights were violated in that the officers entered inside the house without a search warrant in an effort to circumvent the Fourth Amendment by searching the house without a search warrant. The Court further concludes that under the facts of this case the consent given by Mr. Walters was also to get around the Fourth Amendment and that initial entry into the house was a violation of the Fourth Amendment and that the later consent could not validate the search. Even if the officers had probable cause, it does not excuse their failure to obtain a search warrant.

We agree with the State that the trial court erred in its conclusions of law.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994). Similarly, the Constitution of the State of North Carolina provides that "[g]eneral warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted." N.C. Const. art. I, § 20.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651 (1980). Consent, however, has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973). For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary. *Id.* at 222, 36 L. Ed. 2d at 860. Whether the consent is voluntary is to be determined from the totality of the circumstances. *Id.* at 227, 36 L. Ed. 2d at 863.

Similarly, N.C.G.S. § 15A-221(a) provides for warrantless searches and seizures "if consent to the search is given." Under

N.C.G.S. § 15A-221(b) " 'consent' means a statement to the officer, made voluntarily . . . , giving the officer permission to make a search." *See also State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991).

[1] From the findings made by the trial court, we find no support for the conclusion that defendant's constitutional rights were violated "in that the officers entered inside the house without a search warrant in an effort to circumvent the Fourth Amendment by searching the house without a search warrant." The fact that Detective Ruiz had previously obtained information concerning the location of drugs in the home and had previously spoken with one of the residents concerning her consent to search does not invalidate a lawful consent to search. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, the United States Supreme Court expressly recognized the situation presented by the evidence in this case. In determining the test for voluntariness of consent searches, the Court addressed the competing concerns raised by the need for consent searches and the necessity for such searches to be free from coercion. The Court stated:

> In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence. . . . And in those cases where there is probable cause to arrest or search, but where the police lack a warrant, a consent search may still be valuable. If the search is conducted and proves fruitless, that in itself may convince the police that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified. In short, a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity.

*Id.* at 227-28, 36 L. Ed. 2d at 863. The Court further stated:

> Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning.

*Id.* at 231-32, 36 L. Ed. 2d at 865.

[2] "Knock and talk" is a procedure utilized by law enforcement officers to obtain a consent to search when they lack the probable cause necessary to obtain a search warrant. That officers approach a residence with the intent to obtain consent to conduct a warrantless search and seize contraband does not taint the consent or render the procedure *per se* violative of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, ——, 135 L. Ed. 2d 89, 97-98 (1996) (" '[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional' " (*quoting Scott v. United States*, 436 U.S. 128, 138, 56 L. Ed. 2d 168, 177 (1978)). Therefore, the subjective state of mind of Detectives Cooke and Ruiz in this case does not invalidate the officers' otherwise lawful conduct.

The issue then is whether the officers' actions in conducting this search were in fact lawful. The two questions determinative of this issue are (i) whether Walters voluntarily gave consent for the detectives to enter the house, and (ii) whether Abrams voluntarily consented to the search of the room she shared with defendant. Defendant argues that the trial court correctly found that the officers gained their initial entry into the house in an unlawful, nonconsensual manner. The trial court found that after knocking on the door, "the officers asked Mr. Walters if they could come in rather than stand outside. That they then went inside." Defendant argues that the lack of a specific finding of fact as to Walters' consent for the detectives to enter the premises renders the initial entry into the residence illegal and that the illegal entry invalidated Walters' and Abrams' subsequent consents to search.

When a trial court conducts a hearing on a motion to suppress, the court "should make findings of fact that will support its conclusions as to whether the evidence is admissible. If there is no conflict in the evidence on a fact, failure to find that fact is not error. Its finding is implied from the ruling of the court." *State v. Munsey*, 342 N.C. 882, 885, 467 S.E.2d 425, 427 (1996). In the instant case the evidence that Walters granted the officers permission to enter was uncontradicted, and no evidence suggested coercion or intimidation by the detectives.[1] The conclusion by the trial court that "the consent given by Mr. Walters was also to get around the Fourth Amendment and that initial entry into the house was a violation of the Fourth Amendment" implies that consent to enter the house was given by Mr. Walters. After reviewing the entire record in this case, we conclude

---

1 Although present in the courtroom, Walters was not called to testify by either the State or defendant.

STATE v. SMITH

[346 N.C. 794 (1997)]

that the trial court based its conclusion that defendant's constitutional rights were violated on the erroneous belief that the "knock and talk" procedure is unconstitutional rather than on any lack of permission for the detectives to enter the premises initially.

[3] The trial court did not make a specific finding as to whether Abrams voluntarily consented to the search of the room which she and defendant occupied, and the evidence on this point is conflicting. For this reason we cannot determine as a matter of law whether the warrantless search of the room where the drugs were seized violated defendant's Fourth Amendment rights. Accordingly, we reverse the decision of the Court of Appeals and remand to that court for further remand to the Superior Court, Forsyth County, for reconsideration of, and further findings on, defendant's motion to suppress in light of this opinion.

REVERSED AND REMANDED.