STATE v. RAY

[137 N.C. App. 326 (2000)]

STATE OF NORTH CAROLINA v. DURRON BURNNUN RAY, DEFENDANT

No. COA99-506

(Filed 4 April 2000)

**1. Search and Seizure— traffic stop—investigative detention—suppression of evidence unnecessary**

Even assuming that the traffic stop of defendant and his accomplices became an investigative detention, the trial court did not err in a capital sentencing proceeding by denying defendant's motion to suppress evidence, including his confession and items taken from his person linking him to involvement in the crimes, because a lengthy voir dire hearing revealed the officers formed a well-founded suspicion that the men who were detained were involved in the series of robberies earlier that evening, and the limited investigative seizure of the suspects was no longer than necessary.

**2. Sentencing— capital—allocution—no right to testify without cross-examination**

The trial court did not err in a capital sentencing proceeding by denying defendant's motion for allocution, which would have allowed defendant to make an unsworn statement of fact to the jury during the sentencing hearing without being subjected to cross-examination, because: (1) there is no common law, statutory, or constitutional right to allocution in a capital case; (2) N.C.G.S. § 15A-2000(a)(4), which governs sentencing in capital cases, does not give a defendant the right to testify without being subjected to cross-examination or to make unsworn statements of fact during any such argument or otherwise; and (3) defendant concedes he cannot show prejudice since the jury did not impose the death penalty.

Appeal by defendant from judgments entered 17 July 1998 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 21 February 2000.

On 3 March 1997, in response to a "911" telephone call, officers went to a home in Zebulon, North Carolina, where they found a 36-year-old black male, Dewayne Rogers, and a 37-year-old white female, Robin Watkins, lying facedown on the living room floor in pools of blood. Both victims died as the result of gunshot wounds

to the back of their heads. In a bedroom of the home, officers found the dead body of a 14-year-old youth named Dameon Armstrong. Young Armstrong had been shot five times; the fatal wound was made by a bullet which penetrated his lung. Tildren Hunter, Marcus Mitchell, Antonio Mitchell, and Durron Burnnun Ray (the defendant) were indicted for the triple murders. Defendant was tried by a jury at the 22 June 1998 Session of Wake County Superior Court. One of his codefendants, Tildren Hunter, testified for the State and implicated defendant in the murders. The State also introduced defendant's confession to his involvement in the crimes. Defendant was convicted of first-degree murder in each case. After a sentencing hearing, the jury recommended in each case that a sentence of life imprisonment without parole be imposed, and the trial court entered three consecutive sentences of life imprisonment from which defendant appealed.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*John T. Hall for defendant appellant.*

HORTON, Judge.

Defendant contends the trial court erred in (I) denying his motion to suppress evidence linking him to his involvement in the crimes, and (II) denying his motion for allocution at the sentencing hearing. We disagree and affirm the rulings of the trial court.

On the early morning of 8 March 1997, prior to defendant's arrest for murder in this case, he was riding as a passenger in a light blue Nissan Stanza automobile driven by Damien Mitchell. Two uniformed officers of the Raleigh Police Department were patrolling an area of Raleigh where the Nissan was located. The officers noticed that one of the automobile's headlights was burned out, and signaled Mr. Mitchell to stop. After Mr. Mitchell pulled over, the officers approached the vehicle and conducted a standard traffic stop.

As the uniformed officers were preparing to give the driver a warning ticket, officers in the Selective Enforcement Unit (SEU) of the Raleigh Police Department arrived on the scene. The SEU officers searched the Nissan automobile with the consent of the driver, and located a pistol under the floor mat in the rear passenger area where defendant was sitting when the Nissan was stopped. While the search was in progress, the SEU officers received additional information

from detectives who were investigating three armed robberies committed earlier in the evening. The SEU officers concluded that they had probable cause to arrest the three occupants of the Nissan automobile, including the defendant. The occupants were arrested and taken to the police station. While defendant was in police custody, he confessed to his role in various armed robberies and his role in the triple slayings in Zebulon. At trial, defendant moved to suppress his confession and various items taken from his person. After a lengthy *voir dire*, the trial court denied defendant's motion to suppress, and defendant assigns error to that denial.

I.

**[1]** Defendant argues that his arrest was not based on probable cause, and that his confession, as well as the items seized from him, must be suppressed in accordance with the decisions of North Carolina Courts and the United States Supreme Court. *See, for example, State v. Freeman*, 307 N.C. 357, 359-60, 298 S.E.2d 331, 332-33 (1983), and *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963). Our Supreme Court has explained that a " 'warrantless arrest is based upon probable cause if the facts and circumstances known to the arresting officer warrant a prudent man in believing that a felony has been committed and the person to be arrested is the felon.' " *State v. Medlin*, 333 N.C. 280, 289, 426 S.E.2d 402, 406 (1993) (citation omitted).

Here, the trial court conducted a lengthy *voir dire* hearing and concluded that there was probable cause for defendant's arrest, and that his confession and items taken from his person were admissible into evidence. The trial court supported its determination with detailed findings of fact and conclusions of law. It is axiomatic that we are bound by the findings of the trial court if such findings are supported by competent evidence in the record, but the conclusions of law are for our *de novo* review. *State v. Smith*, 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997).

Here, there was competent evidence to support the trial court's findings of fact, and the findings also support the court's conclusions of law. During the *voir dire* hearing on defendant's motion to suppress, the State introduced evidence which tended to show the following: that in the fall of 1996, there were a number of armed robberies in Wake County carried out by three or four black males armed with guns and wearing ski masks, gloves, and baggy clothing; that a task force had been organized to apprehend the robbers; that

on 7 March 1997, police received information from a confidential informant that Antonio Mitchell, Marcus Mitchell, and Tildren Hunter were committing the robberies and Antonio Mitchell was renting a motel room at the Capital Inn in Raleigh; that members of the task force verified that Antonio Mitchell had a room at the Capital Inn and the task force began surveillance of the room; that about 10:30 p.m. that evening, officers received a report of an armed robbery near Lizard Lick, followed by a report of a grocery store robbery, and then a report that a fast food restaurant had been robbed; that all three robberies were carried out by two or three young black males armed with handguns and wearing dark clothing and gloves; that a witness reported that the robbers were driving a light blue automobile; that soon after the third robbery, Antonio Mitchell drove into the Capital Inn parking lot and was arrested.

The State's evidence also tended to show that shortly after Antonio Mitchell's arrest, a light blue Nissan Stanza drove through the parking lot and left; that after the Nissan left the scene, a van occupied by two young black males pulled into the parking lot and stopped; that the two van occupants knocked on Antonio Mitchell's motel room door, but received no response; the two young men looked into Antonio Mitchell's vehicle, then got back into the van and left the scene; SEU officers followed the van a short distance and had uniformed patrol officers stop it; one of the van occupants, David Crummel, told police that he had been in Antonio Mitchell's motel room at the Capital Inn earlier that day, and had smoked marijuana with Antonio Mitchell, Marcus Mitchell, and Tildren Hunter; that the Mitchells and Hunter had bragged about the robberies they were carrying out, and stated that they were going to commit more robberies that night [7 March 1997]; that he, Crummel, knew that Antonio Mitchell, Marcus Mitchell, Tildren Hunter, and Durron Ray, committed the robbery of Byrd's grocery store.

The State offered additional evidence at the *voir dire* hearing of the events which occurred on the early morning of 8 March 1997. We have summarized the events earlier in the opinion, and do not repeat them here. In a detailed order, the trial court found the facts summarized above to be true, and concluded, in pertinent part, that "at the time Sergeant Shermer seized the Defendant[,] Sergeant Shermer had, under the totality of his knowledge and reliable circumstances, probable cause to believe that the Defendant, acting alone or together with others, had committed one or more armed robberies and, therefore, had probable cause to arrest the defendant." A "reasonable man

acting in good faith," armed with the information Sergeant Shermer possessed when he arrested defendant during the early morning hours of 8 March 1997, would have ample probable cause to believe that defendant and the other occupants of the Nissan Stanza had been involved in armed robberies earlier that same evening.

Defendant argues, however, that he was actually arrested prior to the formal arrest by Sergeant Shermer. Defendant contends that, when the uniformed patrol officers had him sit on the ground together with the other occupants of the Nissan automobile, cross his ankles, and place his hands on his knees, he was "in custody," and that the uniformed police officers had no probable cause to arrest him at that time. We disagree.

In *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), the United States Supreme Court set forth a standard for testing the conduct of police officers who have effected a warrantless "seizure" of an individual: "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 20 L. Ed. 2d at 906. Our Supreme Court, after discussing the holdings of *Terry* and of *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612 (1972), has stated that the standard set out in *Terry* and *Adams* "clearly falls short of the traditional notion of probable cause, which is required for an arrest. We believe the standard set forth requires only that the officer have a 'reasonable' or 'founded' suspicion as justification for a limited investigative seizure." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979) (citations omitted).

Here, Officer Carswell testified that when Sergeant Shermer arrived on the scene, the situation escalated from a traffic stop to an "investigative detention." Prior to the stop of the Nissan, the officers had heard a radio broadcast about several different vehicles and suspects having the same description as the men in the Nissan automobile. Before the uniformed officers could give the driver of the Nissan a warning ticket, Sergeant Shermer and other SEU officers arrived on the scene. The two groups of officers exchanged information, and Sergeant Shermer had several conversations with police headquarters. As a result of information relayed to Sergeant Shermer by cell phone, the officers formed the well-founded suspicion that the men who were detained were involved in the series of robberies earlier that evening.

The officers asked for, and received, consent to search the vehicle. We note that Officer Carswell testified that "[a]t that point we had all three individuals exit the vehicle and have a seat on the curb, cross their feet and put their hands on their knees, which is standard procedure for conducting a traffic stop where you're going to search a vehicle." When a handgun and suspicious clothing were discovered in the vehicle, the occupants were placed under arrest. From the time the Nissan vehicle was stopped by the patrol officers in a clearly valid traffic stop, until the suspects were handcuffed and transported to police headquarters for questioning the elapsed time was at most 20 to 25 minutes. Assuming that the traffic stop became an "investigative detention" when the SEU officers arrived on the scene, we hold that the SEU officers were justified under the facts of this case in making a limited investigative seizure of the suspects. We note that the seizure was no longer than necessary, that the defendant and other suspects were not handcuffed during the investigative detention, and that although the officers were armed, they did not draw their weapons or menace the suspects with them. Defendant's assignment of error is overruled.

## II.

[2] Defendant also contends that the trial court erred during the sentencing hearing in denying his motion for allocution. Defendant wished to make an unsworn statement of fact to the jury during the sentencing hearing, without being subjected to cross-examination. The trial court denied the motion for allocution, and also denied a motion by counsel for defendant that he or co-counsel be allowed to read a written statement from the defendant to the jury. The trial court properly denied defendant's motions, based on the holding of our Supreme Court in *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). In *Green*, the Supreme Court held "there is no common law, statutory, or constitutional right to allocution in a capital case." *Id.* at 191, 443 S.E.2d at 42. Sentencing in capital cases is governed by the provisions of N.C. Gen. Stat. § 15A-2000(a)(4) (1999), which gives either the defendant or his counsel the right to "present argument for or against sentence of death." That statutory provision, however, does not give a defendant the right "to testify without being subjected to cross-examination or to make unsworn statements of fact during any such argument or otherwise." *Green*, 336 N.C. at 192, 443 S.E.2d at 43. Further, defendant concedes that he cannot show prejudice based on the ruling of the trial court, since the jury in these cases did

not recommend the imposition of the death penalty. This assignment of error is overruled.

We have carefully considered defendant's remaining assignments of error and find them to be without merit. The record of the proceedings below indicates that defendant was represented at all times by competent counsel, and that he received a fair trial before an able trial judge and jury. In that trial we find

No error.

Chief Judge EAGLES and Judge McGEE concur.