STATE OF NORTH CAROLINA v. DOUGLAS PAGE, JR.

No. COA04-452

(Filed 15 March 2005)

## 1. Search and Seizure— gunshot residue test—no court order—exigent circumstances

The trial court's findings supported its conclusion that, under the circumstances, exigent circumstances and probable cause existed to conduct a gunshot residue test without a nontestimo-

nial identification or other order. The results of the test were correctly admitted.

**2. Search and Seizure— gunshot residue test—consent**

The trial court's finding of fact supports its conclusion that defendant consented to a gunshot residue test and, even if defendant had objected to this finding, it was supported by properly admitted testimony from officers who participated in administering the test.

**3. Constitutional Law— right to counsel—gunshot residue test**

While it was error to fail to advise defendant of his right to have counsel present during a gunshot residue test, the error was not prejudicial because defendant did not assign error to the admission of statements made during the test. The physical evidence would have been seized even if counsel had been present.

**4. Homicide— second-degree murder—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of second-degree murder where, resolving all inconsistencies in favor of the State, defendant admitted being at the scene when the victim was shot, did not render assistance in reviving the victim or contact emergency personnel regarding the shooting, defendant's hands contained gunshot residue, and defendant's inconsistent statements regarding his location during the shooting is circumstantial evidence of defendant's guilt.

Appeal by defendant from judgment entered 21 November 2003 by Judge Jack A. Thompson in Cumberland County Superior Court. Heard in the Court of Appeals 11 January 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Diane A. Reeves, for the State.*

*M. Alexander Charns, for defendant-appellant.*

TYSON, Judge.

Douglas Page, Jr. ("defendant") appeals from a judgment entered after a jury found him to be guilty of second-degree murder. The trial court sentenced defendant to a minimum term of 137 months and a maximum term of 174 months. The trial court did not err when it

STATE v. PAGE

[169 N.C. App. 127 (2005)]

denied defendant's motion to suppress and motion to dismiss defendant's charge of second-degree murder. We find no prejudicial error.

## I. Background

On 1 May 2002, defendant, Marvin George McNeill ("McNeill"), and Valerie Willis ("Willis") were present at the mobile home where defendant and McNeill lived. Defendant and McNeill worked together repairing cars and mowing grass. Both originally arrived home around 8:00 p.m. They left and returned around 10:40 p.m.

At approximately 10:45 p.m., Willis left to pick up her friend, Diane Luther ("Luther"), and the two women returned to McNeill's mobile home around 11:20 p.m. Upon arrival, they found McNeill "on his knees with his head down in the couch." Willis and Luther obtained a telephone, and Luther called 911. Luther determined that McNeill had a pulse, received assistance from Willis in turning McNeill on his back, and administered CPR to him. Defendant was not present when Willis and Luther arrived but entered the room shortly thereafter. During this time, Willis testified that defendant would not "respond[] to anything," and she "didn't know if he was in shock or what." Luther testified that defendant refused to help her administer aid to McNeill.

Deputy Paul Mead ("Deputy Mead") responded to the scene and spoke with defendant. Defendant stated he was standing outside unloading lawn equipment when he heard several gunshots. He came around the mobile home and noticed a light-skinned black male with dreadlocks get into a car and flee the scene. Later, defendant stated to McNeill's brother that he had been inside the house in the restroom when he heard "several" shots. Defendant stated he came out and saw the man with the same description he had given to Deputy Mead in the living room and running out the front door. Luther and Willis testified that upon returning to the house that evening, they had observed a blue-green car nearby and the man inside might have had "dreads."

McNeill was known to sell drugs from his mobile home. Defendant informed McNeill's brother that after the shooting, McNeill had asked him to hide two bags of marijuana located in the house. After the shooting, defendant showed McNeill's brother where he had hidden the bags.

No weapon was recovered. The trial court admitted, over defendant's motion to suppress and subsequent objection, evidence from a

gunshot residue test taken the night of the shooting that revealed gunshot residue on the back of defendant's hands. Although defendant argued otherwise, the State presented evidence defendant had consented to the administration of the gunshot residue test. Defendant was shackled when the test was conducted, although Deputy Mead testified defendant was not under arrest and had not received a Miranda warning. The trial court admitted the evidence concluding that: (1) "it would have been a practical impossibility for law enforcement to secure a non-testimonial identification order . . . .;" (2) probable cause and exigent circumstances had existed; and (3)defendant consented to the test.

Defendant did not present any evidence. The jury returned a verdict of guilty of second-degree murder. Defendant was sentenced in the presumptive range to a minimum term of 137 months and a maximum term of 174 months. Defendant appeals.

## II. Issues

The issues presented on appeal are whether the trial court erred by: (1) failing to grant defendant's motion to suppress the results from a gunshot residue test; and (2) denying defendant's motion to dismiss the charge of second-degree murder.

## III. Motion to Suppress

[1] Defendant contends the trial court erred by admitting into evidence gunshot residue test results taken the night of the murder. We disagree.

On appeal of a motion to suppress, our review is

limited to a determination of whether competent evidence supported the trial court's findings of fact and whether the findings of fact supported the trial court's conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). In the present case, defendant does not object to the findings of fact which the trial court made in the order denying defendant's motion to suppress. Defendant merely assigns error to the denial of the motion to suppress. Therefore, the issues before this Court are whether the trial court's findings of fact support its conclusions of law and whether its conclusions of law are legally correct.

*State v. Coplen*, 138 N.C. App. 48, 52, 530 S.E.2d 313, 317, *disc. rev. denied*, 352 N.C. 677, 545 S.E.2d 438 (2000). Here, defendant did not

assign error to the trial court's findings of fact. Our review is limited to: (1) whether the findings of fact support the conclusions of law; and (2) whether the conclusions of law are correct. *Id.*

The unchallenged findings of fact show, in part:

4. At or about midnight on the 1st day of May 2002 law enforcement arrived at the trailer home of the victim after receiving a 911 call and found the victim deceased as a result of several gunshot wounds.

5. Located at the scene was the defendant along with two distraught females, one being a sister of the victim and a friend of the victim's sister. The two females had arrived at the trailer some time after the shooting, discovering the victim on the floor of the trailer.

6. Upon the arrival of law enforcement and emergency personnel, a large crowd of neighbors and relatives formed around the scene necessitating the placing [of] crime scene tape to secure the scene.

7. The defendant initially told law enforcement that he had been outside the victim's trailer unloading lawnmowers from a trailer when he heard several gunshots and saw a light-skinned black male with dreadlocks run from the trailer, entering a vehicle that left the scene.

8. The defendant later said he was in the rear of the trailer when he heard the gunshots and saw someone running from the trailer.

9. While the officers were securing the scene, the defendant was placed in the rear of a patrol car and the car door was left open and the defendant was told that he was not under arrest.

10. It was decided by law enforcement that the gunshot residue test would be administered on the defendant. The defendant was asked if he would submit to the test and he consented. The defendant was asked if leg shackles could be attached while the test was being administered and the defendant consented.

11. The [gunshot residue] test was then administered on the defendant and the shackles were then removed.

12. Crime scene investigator Jimmy Shackleford testified that the testing guidelines require that the [gunshot residue] test be administered within 3 or 4 hours of suspected use of a weapon. He also testified that evidence of a firing of a gun could be destroyed by wiping or washing hands.

13. The officer also testified that from the remote location of the crime scene, it would have taken at least 2 to 3 hours to obtain a search warrant to administer the [gunshot residue] test.

Based upon these and other findings of fact, the trial court concluded: (1) "it would have been a practical impossibility for law enforcement to secure a non-testimonial identification order . . . due to the time limitations and the evanescent nature of the gunshot residue evidence;" (2) "under the circumstances known to the officers at the scene and the conflicting stories told to them by the defendant and the fact that the defendant was the last admitted person to have seen the victim before the shooting, probable cause and exigent circumstances existed" to warrant the gunshot residue test without a court order; and (3) "the defendant consented to the [gunshot residue] test willfully, understandingly and voluntarily."

### A. Probable Cause

Defendant argues the officers did not have probable cause to conduct the gunshot residue test and conducted the test in violation of his constitutional rights. We disagree.

"The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (citing *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994)).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and establishes, as a general rule, that a valid search warrant must accompany every search or seizure. However, an exception arises when law enforcement officers have probable cause to search and the circumstances of a particular case render impracticable a delay to obtain a warrant. If probable cause to search exists and the exigencies of the situation make a warrantless search necessary, it is lawful to conduct a warrantless search.

Probable cause exists where the facts and circumstances within their [the officers'] knowledge and of which they had reasonable

trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*Coplen,* 138 N.C. App. at 54, 530 S.E.2d at 318 (internal quotations and citations omitted).

A gunshot residue test is a nontestimonial identification procedure "comparable to handwriting exemplars, voice samples, photographs, and lineups." *Id.* at 54, 530 S.E.2d at 318. In *Coplen,* this Court upheld the trial court's denial of a motion to suppress evidence obtained through a gunshot residue test based on the existence of probable cause and exigent circumstances to administer the test. 138 N.C. App. at 55, 530 S.E.2d at 318-19. The trial court's unchallenged findings of fact in *Coplen* showed: (1) the defendant made inconsistent statements to investigating officers regarding the alleged shooting; (2) the victim "was alive when she left the home to get him some beer and she found him in a pool of blood when she returned home;" (3) expert testimony "that gunshot residue wipings must be taken within a four hour time frame, measured from the time of shooting, in order to have any evidentiary value when dealing with a live subject engaging in normal activities;" and (4) testimony that "gunshot residue may be easily removed or destroyed through normal activities such as wringing hands, putting hands in pockets, or shaking hands . . . [and] may be easily destroyed by a person wishing to destroy evidence by such action as hand washing." 138 N.C. App. at 56-57, 530 S.E.2d at 319-20. These findings are substantially similar to those at bar.

Here, the trial court supported its conclusion that probable cause and exigent circumstances existed by finding: (1) defendant was "the last admitted person to have seen the victim before the shooting;" (2) two females arrived on the scene following the shooting and found defendant to be the only person present; (3) defendant offered inconsistent statements to investigating officers regarding his whereabouts during the shooting; (4) the State presented testimony from Investigator Jimmy Shackleford that the test must be conducted within three to four hours of suspected firearm use; and (5) the State presented testimony that evidence of firing a weapon could be destroyed by "wiping or washing hands." The trial court's findings of fact support its conclusion that "under the circumstances known to the officers at the scene and the conflicting stories told to them by the defendant, . . . probable cause and exigent circumstances existed to conduct [the] procedure without a court order of any type."

STATE v. PAGE

[169 N.C. App. 127 (2005)]

## B. Consent

[2] Defendant argues no probable cause existed to conduct a gunshot residue test without a court order. Even if no probable cause existed, the gunshot residue test results may be admitted if "obtained by some [other] lawful procedure." *Coplen*, 138 N.C. App. at 54, 530 S.E.2d at 318.

> Consent . . . has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given. For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary. Whether the consent is voluntary is to be determined from the totality of the circumstances.

*Smith*, 346 N.C. at 798, 488 S.E.2d at 213 (citations omitted).

Defendant's assignments of error relating to the denial of his motion to suppress do not challenge the trial court's *finding* of consent. He argues error in the trial court's conclusion of law that "the defendant consented to the [gunshot residue] test willfully, understandingly and voluntarily." The trial found as a fact, unchallenged on appeal, that defendant consented to the gunshot residue test.

Deputy Mead and Investigator Shackleford, two officers who participated in administering the test, testified that defendant consented to the test, did not withdraw his consent, and continued to cooperate during the administration of the gunshot residue test. Even if defendant had objected to or challenged this finding of fact, it is supported by the officers' properly admitted testimony. Defendant did not object to the officers' *voir dire* testimony regarding defendant's consent and cooperation. The trial court's finding of fact supports its conclusion that defendant consented to the gunshot residue test. This assignment of error is overruled.

## C. Right to Counsel

[3] Defendant also argues that any consent he gave was not knowingly or voluntarily made because he did not have counsel present. In *Coplen*, this Court restated our Supreme Court's holding in *State v. Odom*, 303 N.C. 163, 167, 277 S.E.2d 352, 355, *cert. denied*, 454 U.S. 1052, 70 L. Ed. 2d 587 (1981), that there is "no right to have counsel

present during a gunshot residue test." 138 N.C. App. at 57, 530 S.E.2d at 320.

However, under N.C. Gen. Stat. § 15A-279(d) (2003):

> Any such person is entitled to have counsel present and *must be advised prior to being subjected to any nontestimonial identification procedures* of his right to have counsel present during any nontestimonial identification procedure and to the appointment of counsel if he cannot afford to retain counsel. . . . No statement made during nontestimonial identification procedures by the subject of the procedures shall be admissible in any criminal proceeding against him, unless his counsel was present at the time the statement was made.

(Emphasis supplied). In *Coplen*, this Court explained the impact of this statute on an assignment of error identical to that defendant asserts here, "Section 15A-279(d) 'addresses the implementation of orders requiring submission for nontestimonial identification procedures. . . . [and] the provision protects the defendant from having statements made during the nontestimonial identification procedure used against her at trial where counsel was not present during the procedure.' " 138 N.C. App. at 58, 530 S.E.2d at 320 (quoting *State v. Young*, 317 N.C. 396, 410, 346 S.E.2d 626, 634 (1986) (other citations omitted)).

Applying the statute to the *Coplen* facts, this Court noted the "defendant did not seek to suppress *statements* made during the procedure but instead sought to suppress the *results* of the test." *Coplen*, 138 N.C. App. at 58, 530 S.E.2d at 320 (emphasis supplied); *quoted in State v. Pearson*, 356 N.C. 22, 36, 566 S.E.2d 50, 58, *reh'g denied*, 356 N.C. 177, 569 S.E.2d 271 (2003), *cert. denied*, 537 U.S. 1121, 154 L. Ed. 2d 802 (2002). In *Coplen*, we held that N.C. Gen. Stat. § 15A-279(d) did not "afford defendant any relief on the counsel issue." 138 N.C. App. at 58, 530 S.E.2d at 320. Here, defendant neither identifies in the record nor assigns error to the admission of any *statements* made during the administration of the gunshot residue test to show a violation of defendant's right to counsel.

Our Supreme Court addressed the application of N.C. Gen. Stat. § 15A-279(d) and held "[a]lthough it was error to deny defendant counsel at the [] procedure, such error was not prejudicial under these circumstances." *Pearson*, 356 N.C. at 39, 566 S.E.2d at 60. The Supreme Court held there was no prejudicial error and stated "[t]he

physical evidence would have been seized from the defendant even if counsel had been present . . . ." *Id.* at 35, 566 S.E.2d at 58.

Here, defendant was not denied counsel but was not advised of his right to have counsel present. While this omission was error under N.C. Gen. Stat. § 15A-279(d), *see Pearson, supra,* defendant has failed to show any prejudice by "demonstrat[ing] how the presence of counsel when the evidence was taken would have further protected his rights." *Id.*

Following this Court's precedent in *Coplen* and our Supreme Court's holding in *Pearson,* defendant's assignment of error is overruled.

### IV.　Motion to Dismiss

[4] Defendant contends the trial court erred by denying his motion to dismiss the charge of second-degree murder. We disagree.

In ruling on a motion to dismiss:

> When a defendant makes a motion to dismiss based on the insufficiency of the evidence, the trial court must determine whether the State presented substantial evidence of each essential element of the offense and that the defendant was the perpetrator of the offense. *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). The evidence must be considered in the light most favorable to the State. *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

*Coplen,* 138 N.C. App. at 58-59, 530 S.E.2d at 320-21.

Second-degree murder is "defined as the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. King,* 353 N.C. 457, 484, 546 S.E.2d 575, 595 (2001) (citations and quotations omitted), *cert. denied,* 534 U.S. 1147, 151 L. Ed. 2d 1002, *reh'g denied,* 535 U.S. 1030, 152 L. Ed. 2d 646 (2002). To prove malice, "the State need only show that defendant had the intent to perform the act . . . in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Miller,* 142 N.C. App. 435, 441, 543 S.E.2d 201, 205 (2001) (citation omitted).

In defendant's statements to Deputy Mead, he admitted being present at the scene when McNeill was shot. The State presented evidence that defendant did not render assistance in reviving McNeill or contact emergency personnel regarding the shooting. Defendant's hands were shown to contain gunshot residue. We held the admission of this evidence was not error. Additionally, defendant's inconsistent statements regarding his location during the shooting is circumstantial evidence of defendant's guilt. *See State v. Rick*, 342 N.C. 91, 99, 463 S.E.2d 182, 186 (1995) (holding "the circumstantial evidence presented in this case, together with the reasonable inferences which could be properly drawn therefrom, is sufficient for the jury's consideration and determination").

Resolving all inconsistencies in the evidence in the light most favorable to the State, we hold the trial court did not err in submitting the charge of second-degree murder to the jury. This assignment of error is overruled.

## V. Conclusion

The trial court did not err in denying defendant's motion to suppress or motion to dismiss. Defendant received a fair trial free from prejudicial errors he assigned and argued.

No Prejudicial Error.

Judges WYNN and McGEE concur.