An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-575

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

v.

Mecklenburg County
No. 11 CRS 243001

BARBARA L. HARLING


Appeal by defendant from judgment entered 16 November 2012 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Donald W. Laton, for the State.*
>
> *Kimberly P. Hoppin for defendant-appellant.*


BRYANT, Judge.


Where there was no violation of defendant's rights against unreasonable searches and seizures, the trial court did not err in admitting into evidence cocaine seized from defendant's purse.

On 19 March 2012, a grand jury indicted defendant Barbara Lee Harling on the charge of possession of a schedule II controlled substance, cocaine. On 3 July 2012, defendant filed

a motion to suppress all evidence "obtained as a result of the illegal search and seizure of [] defendant." The Honorable Linwood O. Foust who presided over defendant's trial commencing 14 November 2012, addressed defendant's motion to suppress by conducting a hearing just before the jury was empaneled.

At the suppression hearing, the State presented evidence that shortly after midnight on 21 September 2011, Charlotte-Mecklenburg Police Department patrol officer John Gorrod initiated a traffic stop of defendant's vehicle and arrested defendant upon confirmation that she had outstanding warrants in South Carolina. While watching a video of the stop recorded from his patrol car, Officer Gorrod testified that following defendant's arrest, defendant requested that her personal belongings from the vehicle be retrieved, specifically her purse and cell phone. Defendant then made a second request to have someone move her car from the roadside to an adjacent parking lot. Inside the car, Officer Gorrod found a cell phone, a cloth pouch, and a black leather handbag with a shoulder strap. Defendant identified the cloth pouch as hers but the pouch was empty. Upon searching the black leather handbag, Officer Gorrod discovered a silver gum wrapper containing what he believed to

be crack cocaine. The trial court denied defendant's motion to suppress the cocaine seized.

Defendant was tried before a jury which returned a guilty verdict on the charge of felony possession of cocaine. Defendant was sentenced to an active term of four to five months. The trial court suspended this sentence and placed defendant on supervised probation for a period of fourteen months. Defendant appeals.

_____

On appeal, defendant contends the trial court committed plain error by denying her motion to suppress and admitting the evidence obtained as a result of the warrantless search of her purse. Defendant argues that after defendant identified the cloth pouch as hers, any subsequent search was a violation of defendant's Fourth Amendment rights. We disagree.

Defendant acknowledges to this Court that despite making a pre-trial motion to suppress evidence obtained as a result of a warrantless search of a purse and obtaining a ruling denying her motion, she failed to object to the admission of the evidence at trial. *See* *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000) ("As a pretrial motion to suppress is a type of motion *in limine*, [the defendant's] pretrial motion to suppress

is not sufficient to preserve for appeal the question of the admissibility of his statement because he did not object at the time the statement was offered into evidence." (citation omitted)). "Rulings on motions *in limine* are preliminary in nature and subject to change at trial, depending on the evidence offered, and thus an objection to an order granting or denying the motion is insufficient to preserve for appeal the question of the admissibility of the evidence." *State v. Tutt*, 171 N.C. App. 518, 520, 615 S.E.2d 688, 690 (2005) (citation and quotations omitted). Accordingly, defendant requests that we review the admission of evidence for plain error. *See* N.C. R. App. P. 10(a)(4) (2013) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in

a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516–17, 723 S.E.2d 326, 333 (2012) (citation and quotations omitted).

For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*Id.* at 518, 723 S.E.2d at 334 (citations and quotations omitted). Therefore, we review for plain error the court's admission into evidence the cocaine Officer Gorrod found in defendant's purse.

At the outset we note that defendant does not contest the grounds for the traffic stop or the authority of the arresting officer to seize her. Defendant's argument is limited to the search of a black leather handbag taken from her vehicle by a

law enforcement officer following her request for her personal belongings.

The Fourth Amendment of the United States Constitution protects the right of the people to be secure in their persons and effects against unreasonable searches and seizures. U.S. Const. amend. IV.

> Though the language in the North Carolina Constitution (Article I, Sec. 20), providing in substance that any search or seizure must be "supported by evidence," is markedly different from that in the federal constitution, there is no variance between the search and seizure law of North Carolina and the requirements of the Fourth Amendment as interpreted by the Supreme Court of the United States.

*State v. Hendricks*, 43 N.C. App. 245, 251—52, 258 S.E.2d 872, 877 (1979) (citing *State v. Vestal*, 278 N.C. 561, 577, 180 S.E.2d 755, 766 (1971)) (citation omitted). "The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement . . . ." *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982) (citations omitted).

> Consent, however, has long been recognized as a special situation excepted from the warrant requirement, and a search is not

> unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given. For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary. Whether the consent is voluntary is to be determined from the totality of the circumstances.

*State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (citations omitted).

At trial, Officer Gorrod testified before the jury that on the night of 21 September 2011, he was working as a patrol officer in the 150 block of Dalton Avenue in Charlotte when he observed defendant's vehicle and "ran the tag." He then ran the driver's license associated with the tag, "and it came back that she had two felony warrants from South Carolina." The driver of the vehicle, "a middle aged white female," matched the description provided in the warrants. Officer Gorrod initiated a traffic stop and verified that the driver was the vehicle owner and matched her identification with the person named in the warrants. Officer Gorrod asked defendant to step out of her car, placed her in handcuffs, and escorted her to his patrol car.

> Q. At that time did she say anything to you or make any statements?
>
> A. She said that she needed her belongings and her cell phone out of the vehicle.

And she did not want us to tow her vehicle.

. . .

Q. At any point did you retrieve her personal belongings from the car?

A. Yes. She asked me to grab her cell phone and her belongings, including her purse.

Q. When you did that, what did you do with those things?

A. Brought them back and set it on the hood of the vehicle, my patrol vehicle.

Q. Did the defendant tell you at any point this was, in fact, her purse and her belongings?

A. Yes, she did.

Q. And so what did you do with those belongings?

A. I searched them and located the crack cocaine in them.

Q. Officer Gorrod, if we could just briefly back up, why did you search these items?

A. Anything that goes to intake is my responsibility once they're in my custody. Anything on her person or anything that's going inside the jail cell that belongs to her I have to search before it goes in there. If we allow contraband -- drugs, guns, knives, anything of that nature -- to go inside, it would compromise the facility.

. . .

Q.   Anything found on her person?

A.   No, ma'am.

Q.   Officer Gorrod, when you went through her purse, were there any other items in there?

A.   There were.

. . .

Q.   And the substance that you found in her purse you referred to as crack cocaine . . . how was that -- how did you find that? What did it look like?

A.   There was a balled-up gum wrapper, silver gum wrapper. When I felt it, I felt something hard inside. And I know that drugs have been packaged and concealed in gum wrappers, dollar bills, pieces of paper, things of that nature to conceal from officers. So I opened the gum wrapper, and a white plastic baggie was inside. It was tied in a knot. The knot was consistent with drug packaging, also.

. . .

Q.   . . . Officer Gorrod, at any time that night, did the defendant tell you that that was not her purse?

A.   No, ma'am.

Q.   And did she make any other statements to you that night?

A.   She did confirm that it was, in fact,

> her purse on more than one occasion. She also asked did we need a search warrant to search her purse.
>
> Q.  And what did you say to that?
>
> A.  I told her that since she was going to intake, all of her property that was going with her -- I had to search everything before it went into my vehicle and then into the intake facility.

As defendant was under arrest and being held in the officer's patrol car before she was to be transported away from her vehicle, defendant's request asking that the officer retrieve her purse and other belongings before they left the scene was voluntary.  As such, and under the totality of the circumstances present here, the officer's intrusion into defendant's vehicle was excepted from the warrant requirement by defendant's consent, the search of her car being based upon her request.  *See Smith*, 346 N.C. at 798, 488 S.E.2d at 213 ("For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary.").  Furthermore, the law enforcement officer's search of defendant's purse prior to transporting her to police booking was also in accordance with parameters of Fourth Amendment jurisprudence.  *See State v. Nesmith*, 40 N.C. App. 748, 751, 253 S.E.2d 594, 596 (1979) ("The search and inspection of the

contents of the wallet at the police station was valid as incident to the lawful arrest. Where there is a lawful custodial arrest, a full search of the person [and his personal effects] is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a reasonable search under that Amendment." (citing *United States v. Robinson*, 414 U.S. 218 (1973))). Accordingly, we find no error in the trial court's admission of the cocaine found in defendant's purse.

No error.

Judges McGEE and STROUD concur.

Report per Rule 30(e).