STATE OF NORTH CAROLINA v. ENOS LEE WALLACE

No. 76PA96

(Filed 10 February 1997)

**1. Criminal Law § 131 (NCI4th Rev.)— court's rejection of plea arrangement after concurrence—new evidence**

The trial judge did not err by rejecting a plea arrangement in which he had earlier concurred allowing defendant to plead guilty to second-degree murder and receive a sentence of twenty years on the basis that new evidence recited in open court in support of defendant's tendered guilty plea revealed for the first time that defendant shot the victim through the victim's front screen door since this was not merely a tangential fact; this evidence would have supported defendant's conviction of first-degree murder on a theory of felony murder; and this information also constituted additional evidence of defendant's premeditation and deliberation since he had to shoot the victim through an obstruction. N.C.G.S. § 15A-1021(c).

**Am Jur 2d, Criminal Law §§ 484, 489, 491.**

**2. Constitutional Law § 169 (NCI4th)— court's rejection of plea arrangement—double jeopardy inapplicable**

The trial judge's rejection of a plea arrangement after defendant had tendered a plea of guilty to second-degree murder in open

court pursuant to the arrangement did not violate defendant's right against double jeopardy where the trial court refused to accept the guilty plea and never imposed a sentence.

**Am Jur 2d, Criminal Law § 258.**

3. **Criminal Law § 131 (NCI4th Rev.)— plea arrangement— tender of guilty plea—rejection by court—State not limited as to charge or sentence at trial**

Defendant was not entitled to be tried only for second-degree murder and to receive a sentence of only twenty years on the ground that defendant acted in reliance upon a plea arrangement to his detriment when he tendered a plea of guilty to second-degree murder in open court pursuant to the arrangement where the trial judge rejected the plea of guilty by withdrawing his concurrence to the plea arrangement in accordance with N.C.G.S. § 15A-1021(c) upon hearing for the first time during the State's recitation of evidence in support of defendant's tendered plea of guilty that defendant shot the victim through a screen door.

**Am Jur 2d, Criminal Law §§ 258, 271.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a judgment imposing a sentence of life imprisonment entered by Sitton, J., on 10 March 1992 in Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 13 November 1996.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Leslie C. Rawls for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Enos Lee Wallace, was indicted for first-degree murder on 1 July 1991. A proposed plea bargain by which defendant would plead guilty to second-degree murder was rejected by Judge Beverly T. Beal on 11 October 1991. Defendant was tried at the 2 March 1992 Criminal Session of Superior Court, Mecklenburg County, Judge Claude S. Sitton presiding, and was found guilty by the jury. After a capital sentencing proceeding, the jury was unable to reach unanimous agreement as to a recommendation for punishment. Judge Sitton therefore imposed a sentence of life imprisonment as required by law. The Public Defender's Office was appointed to per-

fect the appeal, but no appeal was filed. On 22 January 1996, Judge Chase Saunders appointed defendant's present attorney to petition this Court for a writ of certiorari. On 4 April 1996, this Court allowed defendant's petition for a writ of certiorari.

The State's evidence tended to show *inter alia* that on 1 June 1991, John Tyson and defendant, who were neighbors, fought at Tyson's home. Roberta Bryant testified that she was living in the other half of Tyson's duplex in June 1991. She first saw the victim, Tyson, at about 12:30 p.m. when he was standing outside talking to his son. She next saw the victim when he was standing by his car. Defendant was with the victim, and Minnie Bell was standing on the other side of the victim's car. Tyson and defendant were arguing. This lasted a few minutes and was followed by a scuffle during which both Tyson and defendant fell into a nearby bush. Tyson said, "Look what you done; you tore my badge off [meaning Tyson's ID tag]." Defendant's brother came upon the scene, and defendant threw a malt liquor beer bottle which hit his brother. Defendant and Tyson then continued their argument, while defendant's brother tried to break it up by telling defendant to leave the victim alone.

Tyson went into his apartment and appeared on his porch carrying a hammer. The scuffle between defendant and Tyson then began again. Defendant told Tyson, "Man, I'm going to prove to you you'll die today; I'll be back." Bryant chatted with the victim for a short while, and then both of them went back into their respective homes.

About ten minutes later, as Bryant stood at her screen door, she saw defendant running back up the sidewalk. She could see that defendant had a small black pistol in his hand. Defendant was heading directly towards the victim's home. Bryant heard two shots. As defendant reached the front steps of the victim's apartment, Bryant closed her front door. She heard two more shots followed by the slam of a screen door. Bryant then went outside and saw Tyson lying in Minnie Bell's yard.

[1] In an assignment of error, defendant contends that the trial court committed prejudicial error by refusing to enforce the proposed plea agreement by which defendant was to plead guilty to second-degree murder and receive a sentence of twenty years' imprisonment. Defendant argues that Judge Beal was bound by his initial concurrence in this particular plea arrangement because no inconsistent information had been presented and because defendant had tendered

STATE v. WALLACE

[345 N.C. 462 (1997)]

a plea of guilty in reliance on the plea arrangement. Defendant further argues that his subsequent prosecution violated the prohibition against double jeopardy.

N.C.G.S. § 15A-1021(c) provides:

> If the parties have reached a proposed plea arrangement in which the prosecutor has agreed to recommend a particular sentence, they may, with the permission of the trial judge, advise the judge of the terms of the arrangement and the reasons therefor in advance of the time for tender of the plea. . . . The judge may indicate to the parties whether he will concur in the proposed disposition. *The judge may withdraw his concurrence if he learns of information not consistent with the representations made to him.*

N.C.G.S. § 15A-1021(c) (1988) (emphasis added). There is no absolute right to have a tendered guilty plea accepted. *State v. Collins*, 300 N.C. 142, 148, 265 S.E.2d 172, 176 (1980). A plea agreement involving a sentence recommendation by the State must first have judicial approval before it can be effective; it is merely an executory agreement until approved by the court. N.C.G.S. § 15A-1023(b) (1988); *State v. Hudson*, 331 N.C. 122, 148, 415 S.E.2d 732, 746 (1992), *cert. denied*, 506 U.S. 1055, 122 L. Ed. 2d 136 (1993).

A review of the transcript in this case tends to show the following: On 11 October 1991, the prosecutor and defense counsel appeared before Judge Beal in chambers to discuss a proposed plea arrangement for defendant. The proposed arrangement was that defendant would plead guilty to second-degree murder and receive a sentence of twenty years. Judge Beal asked for a factual statement, and the prosecutor gave it to him. The prosecutor added that the parties had previously conferred with Judge Fulton on 27 September 1991, at which time a twenty-year sentence had also been offered.

Judge Beal, the prosecutor, and defendant's counsel returned to open court, where the judge proceeded to ask defendant the usual questions when taking a guilty plea. The prosecutor then gave a summary of the evidence. During this recitation, the prosecutor mentioned for the first time that witnesses to the crime had stated that the victim was inside his house when defendant approached, firing his gun towards the front door. At least two of the shots went through the front door, one of them hitting the victim while he was inside. Upon hearing this evidence for the first time, Judge Beal held an

STATE v. WALLACE

[345 N.C. 462 (1997)]

unrecorded conference with counsel at the bench and thereafter went on the record as follows:

> I have heard the factual basis which has been stated by the State in regard[] to this case, but it is the opinion of the Court that the factual basis of that is such that I cannot accept this plea to [second-]degree murder, and I will reject the plea and order the case be continued.

On 21 November 1991, the parties appeared before Judge Shirley L. Fulton, at which time defendant's counsel stated that the parties had appeared on 5 November 1991 before Judge Marvin Gray, who stated he would agree to sentence defendant to fifty years. Defendant declined the offer. Defense counsel told Judge Fulton that Judge Fulton had earlier indicated that she would sentence defendant to twenty years, and argued that defendant now stood in double jeopardy. Judge Fulton ruled that, with regard to the proposed plea arrangement, there was no agreement binding upon Judge Beal and defendant and refused to allow defendant to plead guilty to second-degree murder and to sentence him to twenty years' imprisonment.

Finally, on 18 February 1992, the parties appeared before Judge Sitton, who was to preside over the trial of the case, which was to be tried as a capital first-degree murder. Defendant's counsel stated to Judge Sitton that the basis upon which Judge Beal had rejected the plea arrangement was that the victim had been shot through his front screen door. With regard to the rejection of the plea arrangement by Judge Beal, Judge Sitton made the following pertinent findings of fact:

> That the matter was taken into open court in [courtroom] 2201 before the Honorable Beverly Beal; and,

> That when he heard a recitation of the evidence setting forth factual situations around the alleged events, the Court rejected the plea, learning for the first time that the victim had been shot through a doorway;

> That the Defendant did respond to certain questions prior to that time but that the end result was that the plea was rejected, within the discretion of the Honorable Beverly T. Beal, on October the 11th, 1991[.]

Judge Sitton also prohibited any mention of defendant's earlier tendered guilty plea at trial.

STATE v. WALLACE

[345 N.C. 462 (1997)]

Defendant argues that Judge Beal should not have rejected the plea arrangement on the basis that new evidence recited in open court in support of defendant's tendered guilty plea revealed for the first time that defendant shot the victim through the victim's front screen door. According to defendant, this was only a "tangential" fact. We disagree. The sanctity of the home is of utmost importance, and one ought to be able to feel safe there. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Further, this evidence would have supported defendant's conviction for first-degree murder on a theory of felony murder. *See* N.C.G.S. § 14-17 (1993). It also constituted additional evidence of defendant's premeditation and deliberation since he had to shoot at the victim through an obstruction. This argument is without merit.

[2] Defendant also argues that Judge Beal's rejection of the plea arrangement after he had tendered a plea of guilty to second-degree murder in open court violated his rights against double jeopardy. The Double Jeopardy Clause prohibits a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and in certain situations, multiple punishments for the same offense. *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). Additionally, the Supreme Court of the United States has noted that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507, 81 L. Ed. 2d 437, 442 (1984). None of those events occurred here because Judge Beal rejected the plea arrangement, refused to accept the guilty plea, and never imposed a sentence. The fact that defendant tendered a plea of guilty which Judge Beal rejected is irrelevant. No plea arrangement was ever accepted. Therefore, principles of double jeopardy do not apply. This assignment of error is overruled.

[3] In his second assignment of error, defendant contends that the trial court committed prejudicial error by denying his motion for an order that he be tried for no crime greater than second-degree murder. Defendant argues that by tendering his plea of guilty to second-degree murder in open court, he had acted in reliance upon the plea arrangement to his detriment. He maintains that, as a result, the State should only have been allowed to try him for second-degree murder and that he could only have received the same sentence of twenty years he had agreed to in the rejected plea arrangement. We disagree.

The district attorney enjoys broad discretion to determine whether to try a defendant for first-degree murder, a lesser offense, or to accept a plea to second-degree murder. *State v. Lineberger*, 342 N.C. 599, 467 S.E.2d 24 (1996). A "prosecutor may rescind his offer of a proposed plea arrangement at any time before it is consummated by *actual entry of the guilty plea* and the acceptance and approval of the proposed sentence by the trial judge." *State v. Marlow*, 334 N.C. 273, 280, 432 S.E.2d 275, 279 (1993). Here, there was no "actual entry of the guilty plea" as that phrase was employed in *Marlow*, as upon hearing for the first time during the State's recitation of evidence in support of defendant's tendered plea of guilty that defendant shot the victim through a screen door, the trial court rejected the plea of guilty by withdrawing his concurrence to the plea arrangement according to the terms of N.C.G.S. § 15A-1021(c). This assignment of error is without merit and is overruled.

For the foregoing reasons, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.