STATE OF NORTH CAROLINA v. JAMES NORMAN BURMEISTER, II

No. COA97-1510

(Filed 20 October 1998)

## 1. Venue— motion for change—properly denied

The trial court did not abuse its discretion by denying a first-degree murder defendant's motion for a change of venue where the court found that potential jurors in other counties had been exposed to media coverage and that defendant's own survey showed that the majority of potential jurors in Cumberland County had not formed an opinion, and the selected jurors each stated that they had not formed prior opinions concerning defendant's guilt and could decide the case based solely on the evidence introduced at trial.

## 2. Criminal Law— prosecutor's opening arguments—references to Adolph Hitler

The trial court did not abuse its discretion in a first-degree murder prosecution by not sustaining defendant's objections to references by the prosecutor to Adolph Hitler in his opening argument where overwhelming evidence was presented of defendant's preoccupation with Nazi Germany.

## 3. Evidence— motive and intent—defendant's prejudice relevant

The trial court did not err in a first-degree murder prosecution by admitting evidence relating to defendant's prejudice against homosexuals and Jewish people where evidence of defendant's prejudices was relevant to show his motive and intent when he killed the two black victims.

**4. Evidence— motive and intent—prior conduct—acting out skinhead song**

There was no plain error in a first-degree murder prosecution in the admission of evidence that defendant acted out the lyrics of a skinhead song in a bar fight by kicking a man in the face as he lay on the ground. Evidence of defendant's skinhead beliefs and mindset are relevant to his motive and intent in killing two black victims.

**5. Evidence— accomplice's statement to witnesses—fear of incrimination—admissible**

There was no error in a first-degree murder prosecution in the admission of testimony from several witnesses that an accomplice had been asked about a spider web tattoo and had replied that he did not want to incriminate himself. The significance of the tattoo had already been introduced through other testimony; defendant and the accomplice had been tried separately, so that the Bruton rule had no bearing; and the failure to answer did not amount to an admission or confession of a crime or illegal act.

**6. Witnesses— instructions—credibility—accomplice—alcohol abuser**

Any error was harmless in a first-degree murder prosecution where defendant requested that the court instruct the jury that the testimony of an alcohol abuser must be examined with greater care than ordinary witnesses and that the jury should never convict upon the unsupported testimony of such a witness unless it believed the testimony beyond a reasonable doubt, and the court instructed the jury to consider the opportunity of the witnesses to see, hear, know and remember the facts or occurrences about which the witness testified, that it should examine every part of the testimony of an accomplice witness with the greatest care and caution, and that it should specifically examine the testimony of this witness with great care and caution. The court is not required to frame instructions with any greater particularity than is necessary to enable the jury to properly understand and apply the law to the evidence.

**7. Homicide— conspiracy—evidence sufficient**

The trial court correctly denied defendant's motion to dismiss a conspiracy to murder charge where the evidence, viewed in the light most favorable to the State, was sufficient to submit

the charge to the jury on the theory that defendant and others conspired to kill a black person so that defendant could get his spider web tattoo.

Appeal by defendant from judgments entered 6 March 1997 by Judge Coy E. Brewer, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 23 September 1998.

Defendant James Norman Burmeister, II, was tried in Cumberland County Superior Court on two counts of first degree murder, and one count of conspiracy to commit murder. The State offered evidence tending to show that on the afternoon of 6 December 1995, defendant Burmeister and his friends Randy Meadows (Meadows) and Malcolm Wright (Wright) were drinking beer at defendant's trailer and discussing their hatred of black people. Wright had a spider web tattoo on his elbow, and bragged that the tattoo was used by skinheads to represent that the person with the tattoo had killed a black person. Defendant, who was a neo-Nazi skinhead, became excited by the talk about the tattoo because he wanted to gain recognition and respect among the other skinheads. When the three men left the trailer to go to dinner that same evening, defendant took his pistol, telling Wright and Meadows that he might earn his tattoo that night.

Further evidence for the State tended to show that the men had dinner and stopped at a nightclub in Fayetteville. Thereafter, the men decided to "fu-k with some n---rs," so defendant instructed Meadows to cruise side streets looking for black people. The three men spotted a black couple walking and decided to circle the block. Meadows stopped the car because defendant and Wright were getting out. Defendant and Wright left their flight jackets, their jewelry, and wallets in the car to prevent identification. Defendant instructed Meadows to wait for them for 15 minutes, but to return to the barracks if they were not back within that time.

The State's evidence tended to show that as defendant left the car, he said to Meadows: "You never know. Maybe I'll earn my spider web tonight." Minutes later, Meadows heard three gunshots, followed by three additional gunshots. Meadows waited and did not see his companions, but he saw blue lights and police cars.

The officers arrived on the scene about 12:15 a.m. on 7 December 1995. The first officer to arrive on the scene found two victims in the road with fatal gunshot wounds to their heads.

STATE v. BURMEISTER

[131 N.C. App. 190 (1998)]

Meadows parked the car and walked towards the blue lights and police cars. Meadows first told the officers that he lived in the neighborhood, and later told the officers that he had gotten lost after driving down side streets to avoid the police because he was driving after drinking. The officers did not believe Meadows' story, so they questioned Meadows further and he took the officers to the car where they found two flight jackets with German military insignia. Thereafter Meadows confessed, implicating defendant and Wright, and directed the officers to the trailer where defendant lived. Defendant and Wright were arrested a few hours later at 104 Laurel Street.

A taxi driver testified for the State that he picked up defendant and Wright in the early morning of 7 December 1995 and took them to 104 Laurel Street in Cooper's Ranch Mobile Home Park. The two men had no money to pay for the taxi fare. Instead, they wrote their names, social security numbers, and military units down on a piece of paper and gave it to the taxi driver, telling him they would be in to pay him later.

Another State witness testified that defendant and Wright came to her home about 3:30 a.m. on 7 December 1995 to get a key to the 104 Laurel Street address, because defendant was locked out. She further testified that defendant was renting a room in the trailer at 104 Laurel Street.

The State presented evidence showing that defendant was a member of a skinhead organization and was an avowed racist. In addition, Meadows testified that defendant told him in jail that he had killed the two people.

Defendant was convicted on both counts of first degree murder and for conspiracy to commit murder. However, the jury was unable to agree on a sentence for the charges of first degree murder. Thus, the trial court entered consecutive life sentences on the two murder counts. The trial court then entered a sentence of 196 months to 245 months on the conspiracy count to run at the expiration of the life sentences. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*James R. Parish for defendant appellant.*

HORTON, Judge.

Defendant assigns error to: (I) the trial court's failure to change venue; (II) the trial court's failure to sustain his objection to the district attorney's references to Adolph Hitler in his opening statement to the jury; (III) the trial court's admission of evidence relating to: (A) defendant's expressed prejudice against homosexual and Jewish persons, (B) defendant's action in kicking a person in the face and bragging about it, and (C) witnesses asking codefendant Wright about his spider web tattoo; (IV) the trial court's failure to properly instruct the jury on the credibility of witnesses; and (V) the trial court's failure to dismiss the charge of conspiracy to commit murder at the close of all evidence.

## I. Change of Venue

[1] Defendant claims the trial court erred when it denied defendant's motion to change venue. Defendant introduced numerous newspaper and magazine articles, a telephone survey created to gauge the impact of pretrial publicity in Cumberland County, and the testimony of two witnesses.

"The determination of whether a defendant has carried his burden of showing that pretrial publicity precluded him from receiving a fair trial rests within the trial court's sound discretion." *State v. Knight*, 340 N.C. 531, 553, 459 S.E.2d 481, 495 (1995). The test for determining whether pretrial publicity requires a change of venue is whether it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information, rather than the evidence presented at trial. *Id.*

Although there had been extensive pretrial publicity to potential jurors from Cumberland County, the trial court found that potential jurors in other counties had also been exposed to the media coverage of the murders. The trial court also found that defendant's own survey showed the majority of potential jurors surveyed from Cumberland County had not formed an opinion.

In addition, the trial court decided to use the jury *voir dire* selection process to make certain the jury selected had not formed an opinion that would preclude them from making a decision based on the evidence presented in the case. Our Supreme Court has held that

the potential jurors' responses to questions on *voir dire* are the best evidence of whether pretrial publicity was prejudicial or

inflammatory. If each juror states unequivocally that he or she can set aside pretrial information about a defendant's guilt and arrive at a determination based solely on the evidence presented at trial, the trial court does not err in refusing to grant a change of venue.

*Knight*, 340 N.C. at 554-55, 459 S.E.2d at 495-96 (citations omitted).

The record on appeal indicates that the selected jurors each stated they had not formed prior opinions concerning defendant's guilt and that they could decide the case based solely on the evidence introduced at trial. Thus, the trial court did not abuse its discretion and this assignment of error is overruled.

## II. Opening Statement

[2] Defendant next argues the trial court erred by failing to sustain defendant's objection to the district attorney's references to Adolph Hitler in the State's opening statement to the jury as follows:

You will hear as you sit here a story of evil, an evil that has its roots in an evil that is closely allied with the events that transpired in the 1930s and 1940s in the world. Events engineered—

\* \* \* \*

. . . by Adolph Hitler and his gang of henchmen—

\* \* \* \*

—causing the death of millions of people—

\* \* \* \*

—an evil brought back to life here in Fayetteville by this defendant and a group that called themselves "skinheads." Pure, unmitigated evil. An evil that struck down two completely unsuspecting people. Two people that had no idea of what was coming and what was gonna happen to 'em. Not because they offended anybody, not because they angered someone.

As our Supreme Court has already stated, "arguments of counsel are largely in the control and discretion of the trial judge who must allow wide latitude in the argument of the law, the facts of the case, as well as to all reasonable inferences to be drawn from the facts." *State v. Taylor*, 289 N.C. 223, 226, 221 S.E.2d 359, 362 (1976). The proper function of an opening statement is to inform the trial court and the jury of the nature of the case and the evidence counsel plans

to offer in support of his case. *State v. Jaynes*, 342 N.C. 249, 282, 464 S.E.2d 448, 468 (1995). The trial court's discretion will not be reviewed unless counsel's remarks are extreme and are clearly calculated to prejudice the jury in its deliberations. *Taylor*, 289 N.C. at 227, 221 S.E.2d at 362.

In the instant case, the prosecutor's opening remarks related to the nature of the case and the evidence the State planned to offer in support of it. The prosecutor told the jury that the State's evidence would show the racial killings were committed by a neo-Nazi skinhead who was motivated by the same type of racial hatred as that preached by German Nazis in the 1930s and 1940s.

The evidence presented showed defendant was enchanted with Nazi Germany. In fact, defendant displayed Nazi military flags and posters in his room, listened to and sang neo-Nazi songs, wore Nazi German patches on his jacket, and wore an Iron Cross around his neck. Furthermore, neo-Nazi literature seized in defendant's room espoused the philosophy of white supremacy and racial hatred, urging preparation for the upcoming racial holy war. In light of the overwhelming evidence presented concerning defendant's preoccupation with Nazi Germany, the trial court did not err in overruling defendant's objections.

### III. Admission of Evidence

#### (A) Expressed Prejudices

[3] Defendant claims the trial court erred in admitting evidence relating to defendant's expressed prejudice against homosexuals and Jewish people. N.C. Gen. Stat. § 8C-1, Rule 404(b) (1992) provides that, although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith, such evidence is admissible for other purposes, such as proof of motive and intent.

Our Supreme Court has held that Rule 404(b) is a general rule of inclusion of relevant evidence of other crimes, wrongs or acts, provided that such evidence must be excluded if its only probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged. *State v. Stager*, 329 N.C. 278, 302, 406 S.E.2d 876, 890 (1991). The relevant test under Rule 404(b) is whether there was "substantial evidence tending to support a reasonable finding *by the jury* that the defendant committed a similar act or crime and its probative value is not limited *solely* to

tending to establish the defendant's propensity to commit a crime such as the crime charged." *Id.* at 303-04, 406 S.E.2d at 890.

In the instant case, the evidence of defendant's prejudices was relevant to show defendant's motive and intent when he killed the two black victims. The evidence showed that defendant was advancing his skinhead beliefs. Thus, this evidence was admissible to show motive and intent, and not merely to show defendant's propensity to commit murder. Therefore, this assignment of error is overruled.

## (B) Prior violent behavior

[4] In addition, defendant claims the trial court erred in admitting evidence that defendant kicked a person in the face and bragged about it. The State introduced evidence of a bar fight that defendant was involved in before the murders, in which he acted out the lyrics of one of his skinhead songs by kicking a man in the mouth with defendant's Doc Marten shoes as the man lay on the ground. Defendant claims this evidence was impermissible character evidence used only to show his propensity for violence.

Defendant concedes that he has waived this argument by failing to object when the evidence was introduced at trial. However, he urges this Court to review this evidence under the plain error rule. Defendant must show that he would not have been convicted if the error had not been made or that a miscarriage of justice would result if the error is not corrected. *State v. Odom,* 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983).

In the instant case, defendant has not met his burden. As previously mentioned, evidence of defendant's skinhead beliefs and mindset are relevant under Rule 404(b) to prove defendant's motive and intent when he killed the two black victims. Thus, this assignment of error is overruled.

## (C) Spider web tattoo

[5] Defendant argues the trial court erred in allowing the State to introduce several witnesses quoting Wright. Wright stated, in response to questions as to why he had a spider web tattoo, that he did not want to tell because he did not want to incriminate himself. Defendant cites *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476 (1968), and contends Wright's statements were inadmissible as a codefendant's confession of guilt which incriminated and prejudiced him. Again, defendant concedes that he failed to object to this testi-

mony at trial, but he claims that this Court should consider the evidence under the plain error rule.

First, evidence about the significance of the spider web tattoo had already been introduced in Meadows' testimony. In addition, the *Bruton* rule has no bearing on whether Wright's statement was admissible since Wright and defendant were tried separately instead of jointly. Furthermore, Wright's failure to answer when asked about his spider web tattoo did not amount to an admission or confession of the commission of a crime or illegal act. Therefore, the admission of this evidence was not prejudicial error.

### (IV)  Jury Instruction

[6] Next, defendant claims the trial court erred when it failed to properly instruct the jury on the credibility of witnesses. Defendant requested a special jury instruction that the testimony of Meadows as an alcohol abuser "must always be examined and weighed by the jury with greater care than the testimony of ordinary witnesses[,]" and further, that the jury "should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt."

The court is not required to frame instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence. *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). In the instant case, the trial court instructed the jury to consider "the opportunity of the witness to see, hear, know and remember the facts or occurrences about which the witness testified[.]"

Furthermore, the trial court instructed that the jury "should examine every part of the testimony of an accomplice witness with the greatest care and caution[]" and that the jury specifically should examine Meadows' testimony "with great care and caution in deciding whether or not to believe him[]" because Meadows "was testifying under an agreement with the prosecutor for a charge reduction in exchange for his testimony." Thus, any potential error in failing to give defendant's specific instruction on credibility was harmless. *See State v. Eakins*, 292 N.C. 445, 449-50, 233 S.E.2d 387, 390 (1977).

### (V)  Motion to Dismiss

[7] Finally, defendant argues the trial court erred by failing to dismiss the charge of conspiracy to commit murder at the close of all

evidence. Defendant contends the evidence showed no more than a mutual understanding or implied agreement by Meadows, Wright, and defendant to assault unsuspecting blacks. Defendant further claims the evidence raised no more than a mere suspicion that the object of their agreement was to kill the victims.

A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means. *State v. Arnold*, 329 N.C. 128, 142, 404 S.E.2d 822, 830 (1991). Direct proof of conspiracy is rarely obtainable, and a conspiracy generally is established by a number of indefinite acts, which taken collectively point to the existence of a conspiracy. *State v. Smith*, 237 N.C. 1, 17, 74 S.E.2d 291, 302 (1953).

Viewing the evidence in the light most favorable to the State, the evidence was sufficient to submit the conspiracy charge to the jury on the theory that Wright, Meadows, and defendant conspired to kill a black person so that defendant could get his spider web tattoo. Thus, the trial court correctly denied defendant's motion to dismiss the conspiracy charge.

For the foregoing reasons, the decision of the trial court was free from prejudicial error.

No error.

Judges MARTIN, John C., and TIMMONS-GOODSON concur.