STATE OF NORTH CAROLINA v. HARDIN ELI ROSS, III

No. COA04-1134

(Filed 4 October 2005)

**1. Constitutional Law— double jeopardy—deferred prosecution agreement—plea of guilty never entered**

The trial court did not err in an embezzlement of State property of a value of $100,000 or more by aiding and abetting case by denying defendant's motion to dismiss on double jeopardy grounds or, in the alternative, by denying his motion to enforce the terms of a deferred prosecution agreement even though defendant contends the deferred prosecution agreement constituted a plea of guilty to the five counts of misdemeanor failure to file or failure to pay withholding tax, because: (1) while defendant acknowledged his guilt in fact in the deferred prosecution agreement, a plea of guilty was neither tendered by defendant nor accepted by the trial court; (2) evidence of defendant's opportunity to plead not guilty upon failing to meet the conditions of the agreement supports the conclusion that the agreement did not comprehend a plea of guilty; (3) the record is devoid of any evidence indicating the trial court made a determination of a factual basis for a guilty plea; and (4) the acknowledgment of guilt contained in the transcript of the agreement, without more, is insufficient to raise the legal inference that a guilty plea was entered and accepted. N.C.G.S. § 15A-1341(a1).

**2. Appeal and Error— *Anders* review—denial of motion to dismiss**

An independent review of the evidence by the Court of Appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967), revealed that the trial court did not err in an embezzlement of State property of a value of $100,000 or more by aiding and abet-

ting case by denying defendant's motion to dismiss, because the State presented substantial evidence that defendant embezzled State property in excess of $100,000 by aiding and abetting.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgment entered 5 February 2004 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 14 April 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Rudy Renfer, for the State.*

*Parrish, Smith & Ramsey, L.L.P., by Richard D. Ramsey, for defendant-appellant.*

CALABRIA, Judge.

Hardin Eli Ross, III ("defendant") appeals a judgment entered on a jury verdict finding him guilty of embezzlement of State property of a value of $100,000 or more by aiding and abetting. Defendant asserts the trial court erred by denying his motion to dismiss on double jeopardy grounds or, in the alternative, by denying his motion to enforce the terms of a deferred prosecution agreement. We find no error.

Defendant was the registered agent, president, and CEO of OLI Corporation d/b/a Outsource Leasing ("OLI"). As of 31 January 2000, OLI had operated for over two and one-half years with no liability to the North Carolina Department of Revenue ("DOR") for employee income tax withholding and maintained two operating accounts throughout 2000. Defendant, as CEO, was the only person authorized to withdraw funds from the two accounts. OLI filed all of its 2000 quarterly employee income tax withholding reports late. The first quarterly report was submitted to DOR approximately three months late on 24 July 2000. The second quarterly report was submitted approximately one year late on 17 July 2001. The third quarterly report was submitted approximately three months late on 1 February 2001, and the fourth quarterly report was filed approximately six months late on 17 July 2001. In the four reports, OLI reported withholdings of $27,607.57, $35,649.98, $48,992.48, and $48,992.48, respectively, for a total amount of $161,242.45. However, OLI failed to remit to DOR any portion of the $161,242.45. On 31 January 2000, OLI's two operating accounts contained $11,175.66 and $16,492.66, for a total of $27,668.32. On 31 January 2001, one operating account was

overdrawn by negative $4,009.05, while the other had a balance of $4,591.80, for a total balance of $582.55.

During an interview with a Special Agent from DOR, defendant stated the funds OLI withheld from employee wages were deposited into one of OLI's two operating accounts before remitting to DOR. Defendant stated he understood the withheld funds were to be held in trust for DOR and were not available for either OLI's use or his own. However, he was unaware of what happened to the withheld funds. OLI's office manager testified: (1) defendant decided which bills to pay; (2) no bill was paid without his knowledge; (3) all checks were signed by defendant or with a signature stamp at his direction; and (4) no checks were ever issued with a computer signature.

On 12 March 2001, defendant was charged with five counts of misdemeanor failure to file or failure to pay withholding tax. On 19 July 2001, defendant entered into a deferred prosecution agreement ("the agreement"), in which he acknowledged his guilt in fact to the charges enumerated in the agreement and agreed to comply with the conditions, *inter alia*, to pay restitution to DOR in the amount of $285,231.65 by paying $12,000 a month beginning 1 August 2001. Specifically, the agreement provided that, if defendant successfully performed the conditions of the agreement, the State would dismiss all charges. However, failure to comply with the conditions of the deferred prosecution agreement would result in termination of the agreement. Defendant failed to comply with the conditions of the agreement, therefore, the State voluntarily dismissed the charges referenced in the agreement in order for the Attorney General's Office to pursue prosecution on other charges.

On 23 September 2003, defendant was indicted for aiding and abetting OLI in the embezzlement of State property in the amount of $161,242.45. The defendant filed a pretrial motion to dismiss based on double jeopardy and included in his motion, an alternative, to enforce the State's deferred prosecution agreement. The trial court, after making findings of fact and conclusions of law, denied both of defendants motions. On 5 February 2004, the jury found defendant guilty of embezzlement of State property of a value of $100,000 or more by aiding and abetting, and the court sentenced him to a minimum of fifty-eight months and a maximum of seventy-nine months in the custody of the North Carolina Department of Correction. Defendant appeals.

[1] Defendant asserts the deferred prosecution agreement consti-tuted a plea of guilty to the five counts of misdemeanor failure to file or failure to pay withholding tax. Therefore, to avoid subjecting defendant to double jeopardy, the State's only recourse upon de-fendant's breach of the deferred prosecution agreement was to have defendant sentenced on the charges to which he plead guilty. We disagree.

We note initially that deferred prosecution agreements are authorized by N.C. Gen. Stat. § 15A-1341 (2003), which provides in pertinent part:

> (a1) Deferred Prosecution.—A person who has been charged with a Class H or I felony or a misdemeanor may be placed on probation as provided in this Article on motion of the de-fendant and the prosecutor if the court finds each of the follow-ing facts:
>
>> (1) Prosecution has been deferred by the prosecutor pur-suant to written agreement with the defendant, with the approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct.
>>
>> (2) Each known victim of the crime has been notified of the motion for probation by subpoena or certified mail and has been given an opportunity to be heard.
>>
>> (3) The defendant has not been convicted of any felony or of any misdemeanor involving moral turpitude.
>>
>> (4) The defendant has not previously been placed on pro-bation and so states under oath.
>>
>> (5) The defendant is unlikely to commit another offense other than a Class 3 misdemeanor.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, protects individuals against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Cameron*, 283 N.C. 191, 198, 195 S.E.2d 481, 485-86 (1971). In a criminal jury case in North Carolina, "jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) On a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been

empaneled and sworn to make true deliverance in the case." *State v. Bell*, 205 N.C. 225, 228, 171 S.E. 50, 52 (1933) (citation omitted). Jeopardy may also attach upon the court's acceptance of a plea of guilty. *See State v. Wallace*, 345 N.C. 462, 467, 480 S.E.2d 673, 676 (1997); *State v. Johnson*, 95 N.C. App. 757, 760, 383 S.E.2d 692, 694 (1989). Before a plea of guilty can be accepted, the trial court must first determine that there is a factual basis for the plea. *State v. Sinclair*, 301 N.C. 193, 198, 270 S.E.2d 418, 421 (1980). The factual basis for the plea must appear on the record on appeal. *Id.* A defendant's bare admission of guilt contained in the transcript of a plea does not provide the factual basis for that plea. *Id.*, 301 N.C. at 199, 270 S.E.2d at 421. On appeal, we review the findings of the trial court to determine if such findings are supported by competent evidence in the record, but we review the trial court's conclusions of law *de novo*. *State v. Smith*, 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997).

Defendant does not challenge N.C. Gen. Stat. § 15A-1341 (a1) as a whole, nor does he argue that jeopardy would attach in every instance where a criminal defendant enters into a deferred prosecution pursuant to this statute. Nonetheless, defendant contends that under the terms of his deferred prosecution agreement, a plea of guilty was contemplated and accepted by the trial court. Specifically, defendant points to the following: (1) the agreement's provision reciting defendant's acknowledgment of his "guilt in fact of the offenses charged"; (2) the provision reciting that defendant understands failure to comply will terminate his participation in the deferred prosecution program and will cause his "return[] to court for sentencing of [his] case(s)"; and (3) the trial court's order "that the sentencing in the case(s) is . . . stayed during the period of the continuance."

However, the trial court, when ruling on defendant's double jeopardy motions, found as fact that "[w]hile defendant acknowledged his guilt in fact in the Deferred Prosecution Agreement, a plea of guilty was neither tendered by the defendant nor accepted by the court." This finding is supported by the affidavit of Tiffany Bennett, an Assistant District Attorney in the Forsyth County Judicial District where the agreement was executed, who stated that "when a defendant enters into the deferred prosecution program [in the Forsyth County Judicial District] they are acknowledging guilt in fact. The State does not arraign the defendant, does not present evidence against the defendant, and no witnesses are sworn. No trial will take place unless the defendant fails to complete the program and *then pleads not guilty*." (emphasis added). This statement indicates that if

the State pursued the original misdemeanor charges against defendant after he failed to complete the program, he would have had the opportunity to obtain a jury trial by pleading not guilty. It is axiomatic that evidence of defendant's opportunity to plead not guilty upon failing to meet the conditions of the agreement supports the conclusion that the agreement did not comprehend a plea of guilty. Furthermore, the record is devoid of any evidence indicating the trial court made a determination of a factual basis for a guilty plea. The acknowledgment of guilt contained in the transcript of the agreement, without more, is insufficient to raise the legal inference that a guilty plea was entered and accepted. In light of these facts, we hold that there is competent evidence to support the trial court's conclusion that a guilty plea was neither tendered by defendant nor accepted by the trial court. As defendant was neither tried on, nor pled guilty to, the original misdemeanor charges, jeopardy never attached. Accordingly, defendant's double jeopardy argument is without merit.

[2] Defendant next asserts the trial court erred by denying his motion to dismiss based on insufficiency of the evidence. Defendant concedes sufficient evidence on the record exists to support the jury's conviction. Nonetheless, under *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), defendant requests this Court to independently review the evidence and determine this issue. *See State v. Syriani*, 333 N.C. 350, 386, 428 S.E.2d 118, 138 (1993) (addressing pursuant to *Anders* a defendant's assignment of error regarding the trial court's denial of his motion to dismiss a first-degree murder charge).

A defendant's motion to dismiss should be denied where, taking the evidence in the light most favorable to the State, there is substantial evidence of each element of the offense charged and that the defendant committed the offense. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "Whether evidence presented constitutes substantial evidence is a question of law for the court." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Pursuant to N.C. Gen. Stat. § 14-91 (2003), "any . . . person having or holding in trust for the [State] . . . property and effects of the [State,]" which have a value of $100,000 or more, shall be guilty of a class C felony if that person "embezzle[s] or knowingly and willfully misappl[ies] or convert[s] the [property] to his own use, or . . . knowingly and willfully aid[s] and abet[s] or otherwise assist[s]" or joins another in such embezzlement, misapplication, or

conversion. We have closely examined all the proceedings, including the transcript, record, and briefs, and hold the State presented substantial evidence that defendant embezzled State property in excess of $100,000 by aiding and abetting OLI.

We have carefully considered defendant's remaining arguments and consider them to be without merit. For the foregoing reasons, we hold defendant received a fair trial free from error.

No error.

Judge GEER concurs.

Judge TIMMONS-GOODSON dissents with a separate opinion.

TIMMONS-GOODSON, Judge, dissenting.

Because I believe the State's decision in this case violated defendant's right to fundamental fairness and due process, I dissent.

The record reflects that after being charged with five counts of failure to file or pay withholding tax, defendant entered into a deferred prosecution agreement with the State on 19 July 2001. The agreement stated that defendant "**acknowledge[d] [his] guilt in fact of the offense charged herein**[,]" and that defendant understood that if he failed to cooperate with or perform the duties required of him, his "participation in the program w[ould] terminate, and [he] w[ould] be returned to court for sentencing of [his] case(s)." (emphasis in original). The corresponding court order again acknowledged that defendant was charged with five counts of failure to file or pay withholding tax, and it permitted entry of a deferred prosecution of the charges. The trial court found in pertinent part that "defendant has been apprised and understands [his] legal rights to a speedy trial, waives same, and **allows the case(s) to be continued**[,]" and that "defendant acknowledges guilt in [his] case(s) and understands that **non-compliance will result in sentencing**." (emphasis in original). Based upon these findings, the trial court approved the deferred prosecution and ordered that "sentencing in the case(s) is hereby stayed during the period of continuance[.]"

Until January 2002, defendant thereafter complied with the terms of the agreement. On 2 August 2002, an assistant district attorney of the 21st Prosecutorial District notified defendant's counsel that "[s]ince January 2002 [defendant] has not paid any monies towards

his Deferred Prosecution Agreement" and that "[a]s a result his case has been set for sentencing . . . ." However, rather than proceeding to sentencing on the misdemeanor charges of failure to file or pay withholding tax, the State voluntarily dismissed the charges on. 6 September 2002. On 23 September 2003, defendant was indicted for aiding and abetting the embezzlement of state property, a felony.

The majority upholds the State's decision to pursue prosecution for the felony charge rather than sentencing for the misdemeanor charges based upon the theory that a defendant's agreement to the terms of a deferred prosecution is an admission of guilt in fact rather than guilt in law. However, recognizing the similarities between such agreements and ordinary contracts, I believe this Court should examine the plain language of the deferred prosecution agreement rather than the subjective intent of the parties entering into it. Here, as detailed above, the plain language of the agreement clearly defines defendant's charges, imposes certain duties upon him, and states that if he fails to cooperate with or perform those duties, he will be returned to court for sentencing of his "case(s)." The "case(s)" referred to in the agreement are detailed as "[t]his case coming on to be heard before the undersigned presiding judge, wherein [defendant] is charged with the criminal offense of 5 cts fail to file/Pay Income tax." There is no indication that "case(s)" refers to the felony charge thereafter sought by the State, or any other charge. By unilaterally engrafting the additional felony charge into the agreement, I believe the State violated defendant's right to fundamental fairness and due process.

In *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640 (1981), the United States Supreme Court recognized that

For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Id.* at 24-25, 68 L. Ed. 2d at 648 (citation omitted).

In North Carolina, although deferred prosecutions are becoming increasingly more common (most often in those situations where a first-time offender faces narcotics or driving under the influence charges), our courts have yet to address the numerous issues involved in the execution and satisfaction of their underlying agreements. Nevertheless, the fundamental idea of a deferred prosecution is clear: the defendant agrees to perform certain duties and conditions placed upon him by the trial court, in exchange for the State's agreement to dismiss the defendant's charges upon his or her completion of those duties. In the instant case, although he initially complied with the duties and conditions placed upon him, defendant failed to complete those requirements listed in the deferred prosecution agreement. Thus, by virtue of its terms, the State was well within its rights to thereafter pursue sentencing on the charges detailed in the agreement. However, the State chose instead to dismiss the misdemeanor charges and pursue conviction on a felony charge. As discussed above, this decision was counter to the express terms of the agreement both relied upon by defendant and adopted by the parties. Because I conclude this decision was also counter to the right to fundamental fairness and due process granted by our Constitution, I would reverse defendant's conviction for aiding and abetting the embezzlement of state property. Accordingly, I dissent.