STATE OF NORTH CAROLINA
v.
CARRIE RENEE RATLIFF, Defendant.
No. COA08-235
Court of Appeals of North Carolina
Filed February 3, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General V. Lori Fuller, for the State.
Paul F. Herzog for defendant-appellant.
GEER, Judge.
Defendant Carrie Renee Ratliff appeals her convictions of two counts of accessory after the fact to armed robbery. Defendant argues that because the jury acquitted her on the charges of conspiracy and accessory after the fact to first degree murder, she could not be convicted of accessory after the fact to armed robbery. Although defendant failed to preserve this issue for appellate review, we nonetheless note that the verdicts are not inconsistent, and the trial court, therefore, was not required to set them aside.

Facts
At defendant's trial in Anson County Superior Court on 23 July 2007 through 26 July 2007, the evidence, viewed in the light most favorable to the State, tended to show the following facts. Defendant, Jonathan Hubbard, and Darron McRae had grown up together in Anson County, North Carolina. On 14 July 2002, defendant, Hubbard, McRae, and Calvin Dean drove in defendant's mother's car to the home of Andy Thomas, a local drug dealer. After purchasing marijuana from Thomas, the four drove to Charlotte. On their trip to Charlotte, the four talked about robbing someone. Defendant suggested they rob Thomas because she knew that people went to his house to purchase marijuana on Thursday nights after they received their paychecks. Defendant indicated they would need a gun to rob Thomas, and McRae said that he could get one.
Later that evening, when they had returned from Charlotte, defendant, Dean, McRae, and Hubbard met up and smoked marijuana and drank alcohol together. Hubbard said to the group that he was ready to make "a lick," meaning that he wanted to rob someone. Hubbard showed defendant a gun and told her that he was "fixing to kill somebody." The group then split up.
In the early morning hours of 15 July 2002, McRae and Hubbard went to Thomas' house, planning to rob him. Thomas, Carrie Beverly, Kelvin Jackson, and Annette Sellers were in Thomas' house when Hubbard and McRae arrived. After knocking, Hubbard and McRae entered the house and asked to purchase some marijuana. Thomas gave the marijuana to Hubbard, who handed it to McRae. Hubbard then pulled out a gun, pointed it at Thomas, and demanded that he give Hubbard and McRae all of his money and drugs. At Hubbard's direction, McRae forced Sellers into a bedroom, where she gave him about $60.00 in cash and seven or eight bags of marijuana that were hidden in a night stand. Hubbard forced Beverly to search Thomas' and Jackson's pockets for more money and drugs.
Suddenly, Hubbard fired a shot at Thomas, hitting him in the head. As the other occupants of the house tried to run away, Beverly and Sellers were shot. Jackson attempted to wrestle the gun away from Hubbard, but before Jackson could get the gun, Hubbard and McRae ran out of the house. After Hubbard and McRae left, Jackson called 911, handed the phone to Sellers, and left to find help. When emergency medical services arrived, Thomas and Beverly had died as a result of their gunshot wounds. Although injured, Sellers survived.
After McRae and Hubbard left Thomas' house, they stopped briefly to hide the money they had stolen. They were walking up the street afterwards when they met defendant. Defendant said to them, "I know you all did it. I heard it over the [police] scanner what you all did." Defendant told the two men that they needed to change their clothes to avoid leaving a scent for dogs to follow. Defendant then went back to her house, retrieved clothes for Hubbard and McRae, and waited while they changed into them outside. After they changed clothes, Hubbard and McRae went with defendant to her home so that she could give them a ride. When defendant was unable to do so because her mother had the family car, McRae and Hubbard left. They called her repeatedly afterwards to see if her mother was back with the car, but she stopped answering the phone after two calls. McRae and Hubbard got a ridefrom someone else and fled to Baltimore. They returned to Anson County a few weeks later, however, and turned themselves in to law enforcement.
On 16 July 2002, defendant voluntarily gave a statement to the Sheriff's Department regarding the events on 14-15 July 2002. In that statement, defendant told investigators that she had been urinating by the front gate of Anson Middle School on 15 July 2002 when she saw Hubbard and McRae running across the parking lot. She believed that Hubbard and McRae "had done something" and stopped them, asking what they had done. Defendant told investigators that Hubbard and McRae informed her "they had just robbed the guy they had got the weed from" and asked "for some clothes to change into." Defendant said that as she walked back to her house to get them some clothes, Antoine Garris told her, "I believe your boys just murdered somebody." Defendant stated that she gave McRae and Hubbard some clothes and, after they changed into them, she threw their old clothes down on the ground and they "took off running." Defendant then went back to her house, took the phone off the hook, and passed out on the couch.
Defendant was subsequently indicted for two counts of accessory after the fact to armed robbery, two counts of accessory after the fact to first degree murder, and one count of conspiracy to commit robbery. The jury found defendant guilty of two counts of accessory after the fact to armed robbery, but acquitted defendant of all the other charges. The trial court found as a mitigating factor that defendant was a college student, found no aggravating factors, concluded that the mitigating factor outweighed any aggravating factors, and imposed a mitigated-range sentence of 11 to 14 months imprisonment. Defendant timely appealed to this Court.

Discussion
Defendant's sole argument on appeal is that the trial court erred in failing to set aside the jury verdict as inconsistent with the acquittals. Whether a jury verdict is inconsistent is a question of law that this Court reviews de novo. State v. Hagans, ___ N.C. App. ___, ___, 656 S.E.2d 704, 707, disc. review denied, 362 N.C. 511, 668 S.E.2d 344 (2008); State v. Ross, 173 N.C. App. 569, 573, 620 S.E.2d 33, 36 (2005), aff'd per curiam, 360 N.C. 355, 625 S.E.2d 779 (2006).
Defendant contends that once she was acquitted of conspiracy and of being an accessory after the fact to first degree murder, she could not be convicted of being an accessory after the fact to armed robbery under the doctrines of collateral estoppel, res judicata, and/or double jeopardy. At trial, however, defendant did not raise that issue, but instead only moved to set aside the verdicts as contrary to the weight of the evidence.
Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure provides:
In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.If a party fails to properly preserve a question at trial, that party may not raise that issue on appeal. Id.

Our courts have repeatedly held that double jeopardy cannot be raised as a defense for the first time on appeal. See, e.g., State v. Mason, 174 N.C. App. 206, 208, 620 S.E.2d 285, 286-87 (2005) (holding that defendant waived his right to assert defense of double jeopardy because he had not raised it as a basis for a motion to dismiss at trial), appeal dismissed and disc. review denied, 360 N.C. 293, 629 S.E.2d 280 (2006). In State v. Gobal, 186 N.C. App. 308, 651 S.E.2d 279 (2007), aff'd per curiam, 362 N.C. 342, 661 S.E.2d 732 (2008), this Court explained that "[a] `double jeopardy argument [need not] us[e] those exact words [to be preserved for appeal, if] the substance of the argument was sufficiently presented and, more importantly, addressed by the trial court in finalizing its instructions to the jury.'" Id. at 320-21, 651 S.E.2d at 287 (emphasis original; alterations original) (quoting State v. Ezell, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003)). Nevertheless, in Gobal, we found that the defendant's "vague passing mention of this issue after the jury had been instructed, returned its verdict, and been dismissed from the courtroom" was not sufficient to preserve the error. Id. at 322, 651 S.E.2d at 288.
In this case, after the jury verdict was read, defense counsel only stated: "[W]e move to set it aside and rest [sic] judgment in the case being against the weight of the evidence in this matter." Unlike in Gobal, defendant did not even make a passing mention of double jeopardy, res judicata, or collateral estoppel until she filed her appeal. Our Supreme Court has stressed that "where a theory argued on appeal was not raised before the trial court, `the law does not permit parties to swap horses between courts in order to get a better mount [on appeal].'" State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)), cert. denied, 350 N.C. 848, 539 S.E.2d 647 (1999). Defendant did not, therefore, properly preserve the question of double jeopardy, res judicata, or collateral estoppel for appellate review.
Defendant contends alternatively that she is entitled to plain error review under Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure. Plain error review is, however, limited to challenges to jury instructions and evidentiary rulings, neither of which are involved here. State v. Anderson, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) ("[T]his Court has previously limited application of the plain error doctrine to jury instructions and evidentiary matters."); State v. Greene, 351 N.C. 562, 566, 528 S.E.2d 575, 578 (holding that "plain error analysis applies only to instructions to the jury and evidentiary matters"), cert. denied, 531 U.S. 1041, 148 L. Ed. 2d 543, 121 S. Ct. 635 (2000).
Although defendant further contends that the failure by the trial court to set aside the verdict is structural error, "[s]tructural error, no less than other constitutional error, should be preserved at trial." State v. Garcia, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004), cert. denied, 543 U.S. 1156, 161 L. Ed.2d 122, 125 S. Ct. 1301 (2005). An appellate court only employs structural error analysis when the alleged constitutional error is "so serious" that the appellant is not required to show prejudice; in other words, structural errors "are reversible per se." Id. at 409, 597 S.E.2d at 744. Such error does not, however, excuse a party from preserving that issue below. Id. at 410-11, 597 S.E.2d at 745.
Even assuming defendant's motion to set aside the verdict was sufficient to preserve this issue for appeal, the jury verdicts in this case are not inconsistent regardless whether the issue is couched in terms of double jeopardy, res judicata, or collateral estoppel. Because of the elements of each crime and the evidence presented, the jury could reasonably find that defendant was guilty of being an accessory after the fact to armed robbery while concluding that she was not guilty of conspiracy or accessory after the fact to first degree murder.
In North Carolina, a conspiracy is "an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means." State v. Burmeister, 131 N.C. App. 190, 199, 506 S.E.2d 278, 283 (1998). To prove accessory after the fact to armed robbery in North Carolina, "the State must show (1) robbery, (2) the accused knew of it and (3) possessing that knowledge he assisted the robber in escaping detection, arrest and punishment." State v. McIntosh, 260 N.C. 749, 753, 133 S.E.2d 652, 655 (1963), cert. denied, 377 U.S. 939, 12 L. Ed. 2d 302, 84S. Ct. 1345 (1964). The elements of accessory after the fact to first degree murder are:
(1) that the principal felon had actually committed the felony of murder; (2) that the accused knew that such felony had been committed by the principal felon; and (3) that the accused received, relieved, comforted, or assisted the principal felon in some way in order to help him escape, or to hinder his arrest, trial, or punishment.
State v. Williams, 229 N.C. 348, 349, 49 S.E.2d 617, 618 (1948).
Based on these elements and the evidence, the jury in this case could have reasonably found that defendant did not make an agreement beforehand with McRae and Hubbard to rob Thomas and, therefore, was not guilty of conspiracy. The jury could then have reasonably found, despite the lack of any pre-existing agreement, that defendant did in fact provide aid to McRae and Hubbard, knowing they had in fact just committed a robbery, but not knowing that they had actually committed murder. Such findings result in precisely the verdicts reached here.
Defendant, however, cites a trio of cases in which the United States Supreme Court held that a jury's acquittal of the defendant on one charge precluded his prosecution on another charge based on the same evidence. In each of those cases, however, the jury's findings regarding the first charge necessarily precluded a finding of guilt on the second charge. See Turner v. Arkansas, 407 U.S. 366, 369-70, 32 L. Ed. 2d 798, 801-02, 92 S. Ct. 2096, 2099 (1972) (holding that defendant could not be tried for robbery occurring at a murder when jury had found defendant not guilty of accessory to murder because he was not present at murder scene); Ashe v.Swenson, 397 U.S. 436, 445, 25 L. Ed. 2d 469, 476, 90 S. Ct. 1189, 1195 (1970) (holding, in case arising out of robbery of six poker players, that defendant could not be convicted of robbery of one of six players when he had been acquitted of robbery of one of the other players because jury in first trial necessarily found defendant was not one of the robbers); Sealfon v. United States, 332 U.S. 575, 580, 92 L. Ed. 180, 184, 68 S. Ct. 237, 240 (1948) (holding that when defendant had been acquitted of conspiracy to defraud government, he could not be tried based on same evidence for aiding and abetting to defraud government because second trial "was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent").
In contrast, in this case, the elements of the crimes of conspiracy, accessory after the fact to armed robbery, and accessory after the fact to murder, as well as the evidence relied upon to prove those crimes, were such that a jury could render guilty verdicts as to one of the charges but not the other two charges without being inconsistent. Accordingly, the trial court did not err in failing to set aside the guilty verdicts.
No error.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).